SAMUEL, Judge.
By this suit against The Council of the City of New Orleans and New Orleans Public Service Inc. (NOPSI), plaintiffs seek an injunction prohibiting enforcement of a five cent increase in the transit rate charged by NOPSI, which increase was enacted by the City Council on November 11, 1975. Plaintiffs allege the five cent increase is null and void because the City of New Orleans, and more particularly the City Council, did not give sufficient public notice of the special City Council meeting held on November 11, 1975 at which the increase was approved and thereby deprived plaintiffs and others so situated of due process of law as required by the Home Rule Charter of the City of New Orleans. Defendants answered, averring the validity of the notice and of the rate increase.
After a trial on the merits, there was judgment granting plaintiffs’ prayer for an injunction prohibiting enforcement of the five cent increase. The judgment is based on a finding by the trial court that the increase was null and void because the Council had “failed to follow the prescribed statutory procedures in adopting the transit rate increase.”
NOPSI owns the franchise for electricity, gas and transit service in the City of New Orleans. As a public utility, it is regulated on a unified basis by the City Council.
On April 10,1974 NOPSI filed an application for a ten cent transit rate increase. On October 1, 1974 it filed an application for approval of increases in electric and gas rates and requested an early effective date for the ten cent transit increase for which it applied on April 10, 1974. On November 7, 1974 the City Council granted NOPSI a ten cent transit rate increase, from fifteen cents to twenty-five cents. NOPSI filed no other application for an increase after October 1, 1974.
On December 5, 1974, the City Council adopted procedures for hearings on NOP-SI’s pending application for gas and electric rate increases. These procedures provided for a public hearing “relating to said application . . . ” Plaintiffs argue that because no new application for a transit rate increase was pending, testimony and comment at the public hearing was limited to the October 1, 1974 application relating to gas and electric rates.
Public hearings on the increase in gas and electric rates were held January 6, 1975, April 8, 1975, July 28, 1975, September 24, 1975, and November 5,1975. On November 7, 1975 the president of the City Council directed the Clerk of the Council to call a special meeting for November 11, 1975 for the purpose of making a determination on the application for the rate increases applied for on October 1, 1974.
At its meeting held November 11, 1975 the City Council granted NOPSI gas and electric rate increases and also, by resolution, granted it a five cent transit fare increase, from the twenty-five cents granted one year earlier to thirty cents. Plain *402 tiffs contend the application and the notice of the special meeting of November 11,1975 related only to gas and electric rates, and any increase in the transit rate at that meeting was null and void for lack of proper notice and hearing.
The pertinent portion of the Home Rule Charter regulating the procedure for rate or price changes is § 4-1604, which provides:
“Establishment of Rates. In the exercise of its powers of supervision, regulation and control of any street railroad, electric light, gas, heat, power, waterworks, or other public utility, the Council shall, in cases involving the establishment, change or alteration of rates, charges, tolls, prices, fares or compensation for service or commodities supplied by such utilities, cause notice of the matter to be served upon the person or corporation affected thereby, so that such person or corporation shall have an opportunity, at a time and place to be specified in said notice, to be heard in respect to said matter. The Council shall make all necessary and reasonable rules and regulations to govern applications for the fixing or changing of rates and charges of public utilities and all petitions and complaints relating to any matter pertaining to the regulation of public utilities, and shall prescribe reasonable rules and regulations to govern the trial, hearing and rehearing of all matters referred to herein, under the same procedure as provided for ordinances granting franchises.” (Emphasis ours).
Section 3-112(5)(b) of the Home Rule Charter further provides:
“(5) Proposed ordinances on any of the following specified subjects can be adopted only at a regular meeting of the Council and shall not be adopted until at least twenty-one days after copies thereof shall have been distributed to all members of the Council and made available to the public, nor until a notice of the introduction of such proposed ordinance shall have been published in the official journal of the City not less than one week nor more than two weeks after the introduction thereof, which notice shall state the substance of the proposed ordinance and the date of the meeting at which the Council shall begin its consideration thereof, to wit:

(b) Imposing any license, requiring any permit, establishing any charge for services rendered, not imposed, required, or established at the effective date of this Charter, or increasing the rate of any license, fee, or service charge.” (Emphasis ours).
These provisions are mandatory and have been so held by this court in a recent decision.[1] The above two Home Rule Charter provisions, together with the hereinafter quoted § 4-1602(2), require that when a rate or price alteration or change is sought, the citizens with a pecuniary interest in the ultimate cost of the services of a public utility be given notice of a public hearing in accordance with those provisions so they may be heard thereon.
In addition to the above quoted Home Rule Charter provisions, the trial court concluded the last sentence of Home Rule Charter § 4-1604 also required notice by publication of a meeting to consider a rate increase for utility services. As shown by the above quotation of that section, the last sentence thereof provides the Council “shall prescribe reasonable rules and regulations to govern the trial, hearing and rehearing of all matters referred to herein, under the same procedure as provided for ordinances granting franchises.” In pertinent part, the provision for granting franchises, § 4-1602(2), reads:
“(2) Each such proposed franchise ordinance, after having been introduced in the Council, shall be laid over and published once in full in the official journal. There shall then be published in the official journal three times during each calendar week for the two successive weeks immediately following said publication in *403 full, notices of intention, briefly describing the content of the proposed ordinance and citing where it can be seen. If at any time during such period of publication, any citizen shall file notice with the Clerk of Council of a desire to be heard with respect to the proposed ordinance, it shall be the duty of the Council, after notice thereof in the official journal, to hold a public hearing thereon.”
Whether notice by publication of a utility rate increase is required under § 3-112(5) or under § 4-1602(2) of the Home Rule Charter, or both, the result is inescapable that when a utility rate increase is sought, the required notice by publication must be given in order to afford the public an opportunity to be heard.[2]
Defendants argue that notice of the proposed hearings on increases of electric and gas rates was sufficient notice to justify increase in the transit rate because NOPSI is regulated on a unified basis; that is, when the City Council engages in a proceeding to regulate the rate of any utility, it has the authority to investigate the franchise holder’s entire rate structure, including charges for gas, electricity, and transit. It is true that NOPSI is regulated on a unified basis. But in our view this simply means that the Council can investigate NOPSI’s entire rate structure and the net income derived therefrom for the purpose of reaching a conclusion as to whether an increase in the rates being charged for a particular service is justified. The fact that the Council has such authority does not, by inference, take away from the public the right to notice and hearing of proposed ordinances effecting the particular public utility rate increase being considered. If a rate, price alteration or change is sought by the utility, the public is entitled to notice of the public hearings necessary to effect the same. Such notice must be given in accordance with the Home Rule Charter provisions referred to above[3] and in this case no such notice was given insofar as the contested five cent increase in transit rates is concerned.
In Southern Bell Tel. & Tel. Co. v. Louisiana Pub. S. Com’n,[4] the Supreme Court of Louisiana, in dealing with the Louisiana Public Service Commission’s power to regulate and supervise the control of Southern Bell, stated that while the regulatory commission was authorized to determine the reasonableness of rates and charges made by public utilities, its power and authority to fix rates and charges is limited by provisions of the state and federal constitutions which provide that no person shall be deprived of property without due process of law. The Home Rule Charter of the City of New Orleans clearly sets forth what process of law is necessary to effect a valid change in public utility rates. That process of law was not followed and consequently the five cent transit rate increase cannot stand.
Defendants also argue that information regarding the transit rate increase in suit, together with the fact that the increase would be considered at the November 11 meeting, was contained in articles published in New Orleans newspapers before that meeting and that these articles gave sufficient notice to the public of the proposed increase. The record does contain evidence showing such articles were published. However, these were not the official notices required by the Home Rule Charter and cannot be accepted in lieu thereof.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

. See Bagert v. Moreau, La.App,, 325 So.2d 702, 706, writs refused, La., 329 So.2d 465.

. See Bagert v. Moreau, Id.

. See Bagert v. Moreau, Id.

.187 La. 137, 174 So. 180.