549 So.2d 1218 (1989)
Salome HILDEBRAND
v.
CITY OF NEW ORLEANS and Paul Mitchell, Director of Finance, City of New Orleans and all consolidated cases.
No. 88-CA-2761.
Supreme Court of Louisiana.
September 12, 1989.
Rehearing Denied October 19, 1989.
*1219 Okla Jones, City Atty., Don J. Hernandez, Chief Deputy City Atty., and Blaine G. LeCesne, Deputy City Atty., for appellant.
Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, Moise W. Dennery, Christopher J. Dicharry, Patrick M. Gusman, Parker & Parker, Peter A. Nass, Monroe & Lemann, John D. Wogan, James D. Dalferes, Baldwin & Haspel, John A. Rouchell, Karl J. Zimmerman, Robert R. Rainold, Marie Breaux Stroud, Walker, Bordelon, Hamlin & Theriot, June Y. Bass, Donald E. Theriot, Ronald J. Pursell, Helene McGee Walker, New Orleans, Gerald S. Quinlan, Metairie, Simon, Peragine, Smith & Redfearn, James A. Tramonte, Charles C. Coffee, Lizbeth A. Turner, Thomas Barr, III, John McEnery Robertson, Montgomery, Barnett, Brown, Read, Hammond & Mintz, Stanley McDermott, Jr., Albert Mintz, Walter M. Barnett, Omer F. Kuebel, Alan H. Katz, New Orleans, Roy M. Bowes, Gretna, Satterlee, Mestayer and Freeman, Kent Satterlee, Jr., McCloskey, Langensgtein & Stoller, Edward J. McCloskey, Wegmann and Wegmann, Edward F. Wegmann, Taylor Caffery, Mark W. Malloy, Banks & Fritch, Stephen A. Fritch, George L. Wax, New Orleans, William J. Luscy, III, Henican, James & Cleveland, Philip E. James, Jr., Metairie, and Rene Nicaud, New Orleans, for appellees.
William J. Guste, Jr., Atty. Gen., Jesse J. Marks, Anne Benoit, and Lois Davis, Asst. Attys. Gen., for intervenor.
James C. Russell, Jr., amucius curiae for State of Louisiana, through Dept. of Revenue and Taxation.
William C. Gambel and Pam Peden Bond, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, amucius curiae for Executrixes for Succession of Joseph Marion Legendre.
LEMMON, Justice.
These consolidated cases are before the court on a direct appeal from a judgment of the district court declaring unconstitutional a series of ordinances by the City of New Orleans that levied a municipal inheritance tax. La. Const. art. V, § 5(D).
Facts
Ordinance No. 11,262, which was adopted on July 10, 1986, imposed a tax on "all inheritances, legacies, donations and gifts made in contemplation of death" resulting from deaths that occurred on or after July 15, 1986. The tax was levied on the transfer of all immovables and tangible movables physically situated in Orleans Parish "whether owned or inherited by, or bequeathed, given or donated to a resident of [sic] nonresident, and whether inherited, bequeathed, given or donated under the laws of this state or of any other country". Also taxed was the transfer of all tangible and intangible movables owned by an Orleans Parish domiciliary, wherever the movables were situated. The ordinance further established rates and exemptions which varied with the relationships between the decedents and their heirs or legatees. Under *1220 this ordinance the tax became due and owing at the time an inheritance tax return was filed with the State Collector of Revenue.
Ordinance No. 11,262 was subsequently amended and reenacted by Ordinances Nos. 11,337 and 12,147, adopted on August 7, 1986, and December 10, 1987 respectively. The second and third ordinances were made retroactive to July 15, 1986, the effective date of the first ordinance.
The second ordinance altered the rates of taxation, exempted usufructs of surviving spouses, and provided for a conditional expiration date of December 31, 1986. The ordinance further stated that the "levy of the tax shall take effect at the moment of death". However, the ordinance also carried over the provision that the tax shall become due and owing at the time an inheritance tax return is filed.
The third ordinance was identical to the second except that it did not contain an expiration date.
The plaintiffs in these consolidated cases, who are the heirs and legatees of persons that died after July 15, 1986, challenged the taxing ordinances on a number of constitutional, statutory and procedural grounds. They paid the taxes under protest and filed actions for declaratory judgments seeking to determine the validity of the ordinances. The State of Louisiana intervened, contending that the City was not authorized to levy an inheritance tax.
All parties stipulated that there were no issues of fact to be resolved. The cases were tried on cross motions for summary judgment.
The district court rendered judgment declaring the ordinances unconstitutional. In reasons for judgment the court ruled that the ordinances violated La. Const. art. III, § 12(A)(2), which prohibits the Legislature from passing a local or special law "changing the law of descent or succession", and La. Const. art. VI, § 9(A), which prohibits local governmental subdivisions from enacting "an ordinance governing private or civil relationships". Although other of plaintiffs' arguments were discussed, the court stated that the other issues were moot.
The City filed this appeal, and plaintiffs answered the appeal.[1]
Because we reverse the major portion of the judgment of the district court, we first discuss the source of the City's taxing power and then discuss separately each of plaintiffs' attacks on the ordinances.
The City's Taxing Power
La. Const. art. VI, § 30 provides:
A political subdivision may exercise the power of taxation, subject to limitations elsewhere provided by this constitution, under authority granted by the legislature for parish, municipal, and other local purposes, strictly public in their nature. This Section shall not affect similar grants to political subdivisions under self-operative sections of this constitution. (emphasis added).
The City of New Orleans is governed by a Home Rule Charter originally enacted by Acts 1912, No. 159, and constitutionally recognized by La. Const. art. XIV, § 22 (1921).[2] Act 159 of 1912 was amended and reenacted by Acts 1936, No. 338, which provided in Section 1(f):
The City of New Orleans shall have the right to levy, impose and collect any and all kinds and classes of taxes or license fees that may be imposed that *1221 are necessary for the proper operation and maintenance of the municipality, provided same is not expressly prohibited by the Constitution of the State of Louisiana.... (emphasis added).
Thus, just prior to the adoption of the 1974 Constitution, the City was authorized by the Legislature and its Home Rule Charter to levy any tax not prohibited by the Constitution. See Acorn v. City of New Orleans, 377 So.2d 1206 (La.1979). When the 1974 Constitution was adopted, the City's previous Home Rule Charter provisions were continued in effect by La. Const. art. VI, § 4, which specifically provided that every existing home rule charter entity retained the powers, functions, and duties in effect at the time of adoption which were not inconsistent with the Constitution.[3]
The City thus argues that it retained, after the adoption of the 1974 Constitution, the power to levy any and all kinds and classes of taxes not prohibited by or inconsistent with the Constitution. On the other hand, plaintiffs argue that the City lacked the power to levy an inheritance tax at the time of adoption of the 1974 Constitution and therefore had no power in that respect to be retained by Section 4 of Article VI.
The basis of plaintiffs' argument is that the 1921 Constitution specified a maximum rate of inheritance tax on the three classes of beneficiaries and that the state inheritance tax at the time of the adoption of the 1974 Constitution was being levied at the maximum rate for the first class and near the maximum for the other two. Plaintiffs thus contend that since the City could not have levied an inheritance tax just prior to the adoption of the 1974 Constitution, the City continued to lack the power to do so after the adoption, and La. Const. art. VI, § 4's provision for retaining the home rule powers is not applicable.
We disagree. At the time of adoption of the 1974 Constitution, the City had the full power to levy any tax not prohibited by or inconsistent with the Constitution. Acorn v. City of New Orleans, 377 So.2d 1206 (La.1979). This power included the power to levy an inheritance tax, if not otherwise prohibited by or inconsistent with the Constitution. The limitation on the total amount of inheritance tax did not divest the City of its power to levy such a tax, but rather imposed a temporary bar to the use of that power as long as the state tax was at the maximum allowed rate. The basic power to levy an inheritance tax continued when the 1974 Constitution became effective.[4]
We therefore conclude that the City retained the power to levy an inheritance tax when the 1974 Constitution was adopted, as long as the tax was not otherwise prohibited by or inconsistent with the Constitution.[5]
Violations of Louisiana Constitution
Plaintiffs contend that a municipality is constitutionally prohibited from levying an inheritance tax.
When the framers of the 1974 Constitution intended to prohibit a local governmental subdivision from levying a specific type of tax, they did so in unambiguous terms. Article VII, pertaining to Revenue and Finance, *1222 contains an express prohibition in the clearest terms against a municipality's levying of severance taxes, income taxes, and taxes on motor fuel. La. Const. art. VII, § 4(C); see City of New Orleans v. Scramuzza, 507 So.2d 215 (La.1987). There is no such express prohibition against a municipal inheritance tax. Nevertheless, an ordinance levying a specific type of tax may still be inconsistent with and violative of another provision of the Constitution.
Plaintiffs contend that the ordinances violate La. Const. art. III, § 12(A)(2)'s prohibition against the Legislature's passing local or special legislation changing the law of descent or succession.[6] Plaintiffs argue that the transmission of property upon the death of the owner to an heir or legatee is a privilege (not a right) which only the State can regulate by a general law and that imposition of a municipal inheritance tax infringes on the State's power to regulate that privilege. Quoting from McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), that "the power to tax is the power to destroy", plaintiffs assert that taxation represents the ultimate form of regulation. Plaintiffs further argue that regulation of descent and distribution is a unique area of regulation which requires statewide uniformity.
The contention that the sole power of one legislative body to regulate descent or succession precludes a separate legislative body from levying an inheritance tax was raised in Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969 (1900), in which the original federal inheritance tax was challenged on the basis that the several states had the sole power to regulate successions. The Court stated:
[T]he fallacy which underlies the proposition contended for is the assumption that the tax on the transmission or receipt of property occasioned by death is imposed on the exclusive power of the state to regulate the devolution of property upon death. The thing forming the universal subject of taxation, upon which inheritance and legacy taxes rest, is the transmission or receipt, and not the right existing to regulate. In legal effect, then, the proposition upon which the argument rests is that wherever a right is subject to exclusive regulation, by either the government of the United States on the one hand or the several states on the other, the exercise of such rights as regulated can alone be taxed by the government having the mission to regulate. But when it is accurately stated, the proposition denies the authority of the states to tax objects which are confessedly within the reach of their taxing power, and also excludes the national government from almost every subject of direct and many acknowledged objects of indirect taxation.... It cannot be doubted that the argument when reduced to its essence demonstrates its own unsoundness, since it leads to the necessary conclusion that both the national and state governments are divested of those powers of taxation which from the foundation of the government admittedly have belonged to them. Certainly, a tax placed upon an inheritance or legacy diminishes, to the extent of the tax, the value of the right to inherit or receive, but this is a burden cast upon the recipient, and not upon the power of the state to regulate. This distinction shows the inapplicability to the case in hand of the statement made by Mr. Chief Justice Marshall in McCulloch v. Maryland, 4 Wheat. 431, 4 L.Ed. 607, "that the power to tax involves the power to destroy." This principle is pertinent only when there is no power to tax a particular subject, and has no relation to a case where such right exists. In other words, *1223 the power to destroy which may be the consequence of taxation is a reason why the right to tax should be confined to subjects which may be lawfully embraced therein, even although it happens that in some particular instance no great harm may be caused by the exercise of the taxing authority as to a subject which is beyond its scope. But this reasoning has no application to a lawful tax, for if it had there would be an end of all taxation; that is to say, if a lawful tax can be defeated because the power which is manifested by its imposition may when further exercised be destructive, it would follow that every lawful tax would become unlawful, and therefore no taxation whatever could be levied. Under our constitutional system both the national and the state governments, moving in their respective orbits, have a common authority to tax many and diverse objects, but this does not cause the exercise of its lawful attributes by one to be a curtailment of the powers of government of the other, for if it did there would practically be an end of the dual system of government which the Constitution established.
Id. at 59-60, 20 S.Ct. at 754-55 (emphasis added).
The Court accordingly held that the transfer of property upon death is a usual subject of taxation and one which falls within the common authority of Congress and the several states, although the latter have the sole authority to regulate the devolution of property upon death.
The ordinances at issue in this case, like the legislation levying the federal inheritance tax at issue in the Knowlton case, in no way change the law of descent or succession. The ordinances do not attempt to regulate, or in any manner to change the existing regulations of, the devolution of property upon death. They simply tax the event of transmission and receipt of property upon death. Although the value of the inheritance received by the heirs and legatees under succession law is lessened by the tax, there is no infringement on the state's right to regulate the law of descent or succession. Moreover, while statewide uniformity is required in the law of descent and succession, there is no requirement that the levying of an indirect tax on the transmission and receipt of property upon death be uniform throughout the state.
Plaintiffs further argue that the ordinances violate La. Const. art. VI, § 9's prohibition against enacting an ordinance governing private or civil relationships.[7] Plaintiffs' Section 9 argument is essentially twofold: (1) the ordinances infringe on the State's exclusive power to govern private or civil relationships, and (2) since an inheritance tax is not really a tax, the ordinances were enacted in the exercise of the City's police power rather than its taxing power, resulting in the abridgement of the State's police power.
As to infringement on the State's exclusive power, the trial court interpreted Section 9(A) as reserving to the State the exclusive right to deal with felons in the criminal field and with private or civil relationships in the civil field. We agree with this interpretation, but we disagree that the ordinances interfere with the State's right to govern private or civil relationships.
The Legislature has enacted codes and statutes governing private and civil relationships in such areas as persons, property, obligations, successions, donations, matrimonial regimes, delictual responsibility, prescription, sales, leases, partnerships, corporations, mortgages, trusts, insurance, banking and many other areas. These laws include regulation of the transmission and receipt of property upon the death of the owner. The ordinances at issue do not attempt to govern any of the relationships *1224 established by the Legislature.[8] Just as the ordinances do not infringe on the State's exclusive right to regulate the law of descent or succession, they do not infringe on the State's exclusive right to govern private and civil relationships. (Indeed, the grant to the State of the exclusive right to govern private and civil relationships is a corrollary to the grant of the State's exclusive right to regulate (by general law only) the law of descent or succession, as well as the other rights specifically withheld from local regulation by La. Const. art. III, § 12.) The ordinances simply serve as a revenue-raising measure imposed on the transmission and receipt of an estate. While the value of the inheritance is affected, the right to regulate the private and civil relationships between the owner of property and his heirs or legatees is not.
As to the contention that an inheritance tax is not really a tax enacted under the City's taxing power, plaintiffs cite Succession of Barr, 250 La. 141, 194 So.2d 726 (1966), in which this court stated that an inheritance tax is "not a tax proper", but "a bonus or premium exacted by the sovereign on the transmission of an estate". Id. 194 So.2d at 727. On the basis of this language, plaintiffs argue that the City is attempting to regulate the transmission of an estate by ordinances which abridge the police power of the State.
The Barr case must be analyzed to determine its holding and the applicability of that holding to this case. The opinion should not be searched for language that was unnecessary to the decision, but may suit a party's interest in subsequent litigation.
The issue in the Barr case was whether the application of the state inheritance tax to mineral and royalty interests in the decedent's estate violated the constitutional prohibition against imposition of additional taxes on "oil, gas or sulphur leases", a prohibition which was clearly against the levying of additional property taxes. The court held that there was no violation of the constitutional prohibition. While the majority used such language as "death duty", "excise", and "premium or bonus" to avoid classifying the levy as a tax at all, the three concurring justices applied the correct reasoning that the tax on inheritances was a tax on the transmission by inheritance rather than a property tax.[9] Interestingly the author of the majority opinion voted to grant a rehearing, leaving the decision as doubtful precedential value. Moreover, the key question in Barr was not whether the taxing authority had the power to levy an inheritance tax at all, but whether certain property was subject to the undisputedly valid tax. We therefore do not find Barr helpful to the resolution of any issues in this case.
The imposition of an inheritance tax is an exercise of the government's taxing power. Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969 (1900). La. Const. art VI, § 9 addresses the police power (not the taxing power) of the State and of local governmental subdivisions.[10] Police power *1225 encompasses the protection of the health, welfare and property of the citizens and the preservation of good order and public morals. Fernandez v. Alford, 203 La. 111, 13 So.2d 483 (1943). Section 9(A) imposes absolute prohibitions on a local governmental subdivision's exercise of its police power, prohibiting the creation or punishment of felonies and the establishment or revision of private or civil relationships. Section 9(A) does not purport to strip the subdivision entirely of its police power, but simply sets forth specific limitations in certain areas. On the other hand, Section 9(B) applies when there is a conflict between a subdivision's otherwise valid police power measures and those of the State, in which case the latter shall prevail. See City of New Orleans v. State, Department of Corrections, 364 So.2d 1020 (La.1978), in which the City's exercise of its police power in adopting zoning ordinances was required to yield to the State's exercise of its police power in utilizing a state-owned building to house convicted felons.
There is an important distinction between a local governmental subdivision's exercise of its police power and its exercise of its taxing power. Audubon Insurance Company v. Bernard, 434 So.2d 1072 (La.1983); 1 T. Cooley, The Law of Taxation § 27 (4th ed. 1924). The power to levy a fee under the police power is separate and distinct from the power to levy a tax under the taxing power. The former is the power to regulate, while the latter is the power to tax. Acorn v. City of New Orleans, 407 So.2d 1225 (La.1981).
The ordinances in this case, adopted solely for the purpose of raising revenue, clearly involve the exercise of the City's taxing power. We therefore conclude that the ordinances do not abridge the police power of the State.
Equal Protection
Plaintiffs contend that the ordinances violate the equal protection guarantees of the United States and Louisiana Constitutions. Citing Township of Hillsborough v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946) for the proposition that an individual is protected from state action which subjects him to taxes not imposed on others of the same class, plaintiffs point out that heirs and legatees of other Louisiana domiciliaries pay nothing more than the state inheritance taxes and yet receive the same benefits of Louisiana succession laws.[11] In the same vein the trial court noted that, because of the tax, the citizens of the other sixty-three parishes enjoy greater benefits from the State's regulation of successions.
Differences in the treatment, selection or classification of persons or property may be permitted so long as the discrimination is not invidious, unreasonable, or oppressive, but is founded on just and equitable distinctions. Acorn v. City of New Orleans, 377 So.2d 1206 (La.1979). The purpose of the ordinances in this case was to raise revenues to finance the operation of the City, including the provision of those basic services that protect and enhance the value and usefulness of property located in the City and enhance the quality of life for persons domiciled in the City. The ordinances do not invidiously, unreasonably or oppressively discriminate among the successions of persons domiciled in the City or among succession properties located in the City, but rather treat all similarly situated successions and succession properties in a wholely uniform fashion. An inheritance tax imposed by a municipality on the transmission or receipt of succession property located in, or owned by persons domiciled in, that city is not unreasonably discriminatory simply because no such tax or a lesser tax is imposed on property or persons in neighboring cities or parishes.
Due Process
Citing Miller Brothers Co. v. Maryland, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744 (1954), plaintiffs point out that "due process requires some definite link, some minimum connection between the taxing authority and the person, property, or *1226 transaction it seeks to tax". Id. at 344-45, 74 S.Ct. at 539. Plaintiffs argue that just as due process would be violated by the City's levying a sales tax on sales in Caddo Parish, there was a due process violation when the City levied an inheritance tax on property whose only relationship to the benefits and protections offered by the City was the domicile of the property owner at the time of his death. The focus of plaintiffs' attack is the City's attempt to extend the tax to (1) the transfer of tangible movables owned by parish residents which had acquired a tax situs elsewhere at the time of the owner's death and (2) the transfer of intangible movables.[12]
The Due Process Clause of the United States Constitution dictates that the sole authority to tax the transmission of real property or tangible personal property upon the death of the owner is vested in the state where the property is located at time of death. See Foreign-held Bonds, 82 U.S. (15 Wall) 300, 21 L.Ed. 179 (1872) (holding that the taxing power of a state is limited to property within its jurisdiction); Union Refrigerator Transit Co. v. Kentucky, 199 U.S. 194, 26 S.Ct. 36, 50 L.Ed. 150 (1905) (extending the protection for real property to tangible personal property); Frick v. Pennsylvania, 268 U.S. 473, 45 S.Ct. 603, 69 L.Ed. 1058 (1925) (extending the Union Refrigerator rationale of property taxation to taxes on the transfer of property upon the death of the owner); Note, Due Process Limits on State Estate Taxation: An Analogy to the State Corporate Income Tax, 94 Yale L.J. 1229 (1985). In Frick v. Pennsylvania, supra, the state of the decedent's domicile attempted to levy an estate tax on tangible personal property which had an actual situs in another state at the time of the owner's death. The Court held that a tax on such property or on the transfer of such property at the death of the owner contravenes due process of law. See also Treichler v. Wisconsin, 338 U.S. 251, 70 S.Ct. 1, 94 L.Ed. 37 (1949).
By analogy to the Frick decision's application of due process principles to a state inheritance tax on tangible movables with a situs outside the state, we hold that the ordinances violate due process insofar as they attempt to levy a tax on tangible movables which had acquired a situs outside the City at the time of the owner's death, even though the owner is domiciled in the City at the time of death.[13] Nevertheless, it is unnecessary to declare that the ordinances are unconstitutional in their entirety. The offensive part of the ordinances is severable and may be stricken without affecting the remaining provisions.
As to intangibles plaintiffs argue that the multijurisdiction problems inherent in the tax are highlighted by the levy on intangibles because the Supreme Court in Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339 (1939), recognized that more than one state may impose death taxes on intangible property.
In this case the court is called upon to determine the validity, not the wisdom or the simplicity, of the ordinances. The taxing authority of the domicile of the owner of intangible property may validly levy a death tax on such property. Blodgett v. Silberman, 277 U.S. 1, 48 S.Ct. 410, 72 L.Ed. 749 (1927). This taxing power is not affected by the fact that some other jurisdiction also may constitutionally levy such a tax. The City's constitutional and legislative authority to levy an inheritance tax on the transmission of intangibles owned by City domiciliaries at the time of death is *1227 not affected by the possibility that another city or parish may attempt to levy a similar tax (presumably by claiming the decedent was domiciled there).[14]
Preemption
Plaintiffs contend that the State has so pervasively legislated in the field of death taxation as to preempt the field, thus prohibiting the City from exercising any taxing authority in the area.
The doctrine of preemption evolved because the Supremacy Clause of the United States Constitution requires that federal law override state regulation in case of conflict in legislation. In effect, legislation by a superior legislative body preempts that by an inferior body when the two conflict. Preemption may be express or implied. Most litigation, of course, involves contentions of implied preemption, and the courts are called upon to determine the legislative intent of the superior body.
In the federal sphere, when Congress has not expressly provided for federal preemption, the courts determine Congressional intent by examining the pervasiveness of the federal regulatory scheme, the need for national uniformity, and the danger of conflict between the enforcement of state laws and the administration of federal programs. Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956); J. Nowak, R. Rotunda & J. Young, Constitutional Law §§ 9.2, 9.4 (3d ed. 1986). Nevertheless, the exercise of federal supremacy is not lightly to be presumed. New York State Department of Social Services v. Dublino, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973). This court has also recognized that state power is not preempted unless it was the clear and manifest purpose of Congress to do so or the exercise of dual authority is repugnant to the Congressional objective. Poche v. Avondale Shipyards, Inc., 339 So.2d 1212 (La. 1976).
In the state sphere the courts usually determine preemption by similar analyses.
Plaintiffs rely on Rollins Environmental Services v. Iberville Parish Police Jury, 371 So.2d 1127 (La.1979), which held that the need for the State to coordinate federal and state environmental control regulations had prompted the Legislature to act in a number of significant ways that precluded local regulations in the area. Plaintiffs argue that the need to coordinate state and federal death tax regulations prompted the Legislature to preempt the field in order to avoid an undesirable burden on taxpayers.
There is no express constitutional, codal or statutory provision granting the State the sole power to levy an inheritance tax.[15] Plaintiffs' preemption argument therefore turns on the determination of an implied legislative intent for the State to preempt the field of death taxation.[16]
*1228 Plaintiffs point out that the State has enacted a comprehensive system of death taxation consisting of an inheritance tax under La.R.S. 47:2401 et seq. and an estate transfer tax under La.R.S. 47:2431 et seq.[17] Plaintiffs assert that the levy of a local inheritance tax completely disrupts the State's comprehensive scheme of death taxation because there is neither a credit nor a deduction for municipal death taxes. Thus, according to plaintiffs, the municipal inheritance tax results in unintended multiple taxation on the same property.
Consideration of the criteria for determining intent to preempt in Pennsylvania v. Nelson, supra, does not support a finding of implied preemption. First, the State's death taxation system is not so pervasive as to indicate a legislative intent to preempt the field. There is simply no indication in either the state inheritance tax laws or the estate transfer tax laws of any legislative intent for the State to preempt the field of death taxation to the exclusion of local governmental subdivisions. The mere fact that the superior legislative body has enacted legislation in an area does not necessarily imply an intent to preempt. Nor is the area of death taxes one in which there is such an inherent need for pervasive action by the higher legislative body as there was in regulation of environmental quality, a matter of broad national and state concern.
Second, the State did not occupy the field because of any need for statewide uniformity in death taxes. The purpose of the enactment of the estate transfer tax was not to achieve statewide uniformity in death taxes, but to secure funds for the State which would otherwise go to the federal government.
Finally, there is no danger of conflict between the enforcement of local tax levies and the administration of the State's death taxation program.[18] The levy of a municipal inheritance tax does not prevent the State from continuing to take complete advantage of the federal credit for state death taxes. Inasmuch as taxpayers cannot take a credit for municipal inheritance taxes on the federal estate tax return, there will be no less revenue for the State resulting from the levy of a municipal inheritance tax. Of course, the taxpayers will incur additional taxes when a municipal inheritance tax is levied, but this would also occur if the state or the federal tax rate were increased or if the federal tax credit were decreased or repealed.[19]
*1229 Due Date of Taxes
Plaintiffs contend that the ordinances conflict with state law because the tax, being due at the moment of death, may be levied on any heir or legatee regardless of whether such heir or legatee accepts the succession.[20] Plaintiffs argue that the tax is inconsistent with the codal concept of seizin.
Section 28A-1 of the second and third ordinances provides that "[t]he levy of the tax shall take effect at the moment of death". Section 28A-6 provides that the tax "shall become due at the time at which an inheritance tax return is filed with the Collector of Revenue of the State of Louisiana".
Under La.C.C. art. 944 the heir of the decedent succeeds of right to the succession of the decedent from the moment of death, so that the right of the heir may be transmitted to his own heirs, whether or not the decedent's heir accepted the succession or even had knowledge of its benefits. However, the state inheritance tax is not enforceable until the decedent's heir's right of seizin in law is merged into seizin in fact of a particular property. Succession of Martin, 234 La. 566, 100 So.2d 509 (La. 1958).
The effective time of the levy stated in the municipal inheritance tax ordinances does not necessarily prescribe the time of imposition of the tax. Section 28A-1 may be reasonably interpreted so that the tax is valued as of the moment of death, but is not enforceable until the tax becomes due. Another section of the ordinances specifies the time at which the taxes become due, which is the time the inheritance tax return is filed. Only an heir or legatee who accepts the succession would file such a return.
The State's scheme of inheritance taxation is tied directly to the civilian concept of seizin. The City's scheme of inheritance taxation parallels that of the State and is consistent with the Louisiana concept of seizin. The only heirs who are subject to either inheritance tax are heirs who have not only seizin in law, but also seizin in fact.
Expiration Date
Plaintiffs contend that the second ordinance expired by its own terms on December 31, 1986. The expiration provision of the second ordinance stated:
[T]he tax imposed by this chapter shall terminate on December 31, 1986 if the electors of the City of New Orleans approve the levy of a real property service charge at an election to be held on September 27, 1986, however, should the electors fail to approve the levy of a real property service charge at said election, the tax herein provided for shall continue in full force and effect as to inheritances, legacies, donations and gifts made in contemplation of death from those persons whose death occurred on or after July 15, 1986 until aforesaid date of expiration and shall be paid as provided in Section 28A-6 of this chapter. (emphasis added).
By the express terms of the ordinance the tax expired on December 31, 1986 only if the voters approved the real property service charge, a condition which did not occur. When the service charge election failed, the tax "continue[d] in full force and effect" under the express terms of the ordinance. The phrase "until aforesaid date of expiration", while confusing, cannot reasonably be construed, as plaintiffs suggest, to fix an expiration date of December 31, 1986, regardless of the outcome of the service charge election. Such a construction of the three-word phrase would totally *1230 frustrate the obvious purpose of the entire provision, which clearly was to terminate the tax if the other source of revenue was forthcoming, but to continue the tax if the other source of revenue failed to materialize. Despite the confusing phrase noted above, any other interpretation would be absurd. We therefore conclude that the second ordinance did not terminate on December 31, 1986.
Procedural Deficiencies
Plaintiffs contend that the City failed to comply with the notice requirements of the Home Rule Charter in adopting the first inheritance tax ordinance.
Section 3-112(5)(a) of the Home Rule Charter provides:
(5) Proposed ordinances of any of the following specified subjects can be adopted only at a regular meeting of the Council and shall not be adopted until at least twenty-one days after copies thereof shall have been distributed to all members of the Council and made available to the public, nor until a notice of the introduction of such proposed ordinance shall have been published in the official journal of the City not less than one week nor more than two weeks after the introduction thereof, which notice shall state the substance of the proposed ordinance and the date of the meeting at which the Council shall begin its consideration thereof, to wit:
(a) Levying any tax or excise not imposed at the effective date of this Charter, or increasing the rate of any tax or excise. (emphasis added).
The first ordinance was introduced at the Council meeting of June 19, 1986 as a proposed amendment to the City Code, enacting Chapter 28A thereof. Notice of the introduction of the ordinance, published within the time period required in the Charter, specified July 17, 1986, the third Thursday of July, as the date on which the proposed ordinance would be considered.
On July 7, 1986, a second notice of the introduction of the ordinance was published specifying that the Council would consider the proposed ordinance at its regular meeting of July 10, 1986. This ordinance was adopted at the July 10, 1986 meeting of the Council and was subsequently approved by the Mayor on July 14, 1986.
Procedural requirements for the enactment of ordinances contained in Home Rule Charter are mandatory, and specific adherence thereto is required. Metropolitan New Orleans Chapter of the Louisiana Consumers League, Inc. v. Council of the City of New Orleans, 349 So.2d 400 (La.App. 4th Cir.1977). Inasmuch as the first published notice specified the July 17, 1986 meeting date for the first consideration of the proposed ordinance, the ordinance adopted on July 10, 1986 did not comply with the notice requirement and is invalid. Moreover, the second notice was published on July 7, 1986, four days after the last date permitted for publication. The proposed ordinance also was not adopted at a regular meeting, as required by the Charter.[21] Because of these deficiencies, the ordinance adopted on July 10 was invalid and of no effect.
The second ordinance was introduced at the Council meeting of July 17, 1986, one week after the passage of the first ordinance. Notice of the introduction of this ordinance was timely published on July 25, 1986. The ordinance was adopted by the Council on August 7, 1986, the first Thursday in August and the date stated in the notice for initial consideration. No procedural deficiencies have been pointed out as to this ordinance.
Plaintiffs argue, however, that the notice of the introduction of the second ordinance was insufficient because the notice did not "state the substance of the proposed ordinance", as required by Home Rule Charter § 3-112(5)(a), with sufficient clarity so that the public could recognize the Council's intentions.
The published notices contained the following identical statements of the substance *1231 of the ordinance to be considered by the Council:
To impose a tax upon all inheritances, legacies, donations and gifts made in comtemplation of death; to provide exemptions from said tax; to establish the rates of said tax; to provide for the collection of said tax.
Plaintiffs argue that anyone reading the notice of the introduction of the second ordinance would not be informed that the City had failed to levy a valid inheritance tax under the first ordinance, but would be led to believe that the second ordinance merely amended the earlier ordinance rather than completely enacting a new inheritance tax.
The purpose of the requirement of notice of the introduction of proposed ordinances, similar to purpose of the title-body clause of La. Const. art. III, § 15(A), is to give the lawmakers and the public fair notice of the scope of the proposed legislation, thereby affording interested persons the opportunity to assert their support or opposition and preventing surprise or fraud upon the members of the legislative body. Louisiana Independent Auto Dealers Association v. State, 295 So.2d 796 (La.1974). The description of the object of the second ordinance completely fulfilled the purpose of the notice requirement. The lawmakers and the public were clearly put on notice that the proposed ordinance was designed to levy an inheritance tax. Furthermore, the second ordinance did not merely amend the first ordiance (which was invalid and incapable of amendment); the second ordinance, as noted in its preamble and its body, "reordain[ed] Chapter 28A of Ordinance Number 828 M.C.S.... to impose a tax upon all inheritances, legacies, donations and gifts made in contemplation of death...." The ordinance adopted on August 7, 1986 was therefore capable of standing alone, without regard to the validity of the first ordinance.
The third ordinance was adopted on December 19, 1987, apparently in response to the present litigation. Plaintiffs contend that this ordinance was invalid because the City first proposed to enact a new tax retroactive to January 1, 1987 and later abandoned that proposal in favor of one enacting a new tax retroactive to July 10, 1986. Plaintiffs argue that the City by this procedure created such confusion that there was not substantial compliance with the notice requirements of the Charter. Because two almost identical ordinances were introduced and advertised within a five-week period and were considered by the Council on conflicting days, plaintiffs assert that the public was not given notice of the significant differences between the two proposals, particularly as to their retroactive application.
No deficiencies in the procedural requirements of the Charter have been pointed out by plaintiffs as to the December 1987 ordinance. The fact that the first proposal was introduced and abandoned does not in itself affect the validity of the ordinance adopted after proper introduction and notice of a different proposal.
In summary we conclude that the ordinance adopted on July 10, 1986 was invalid, but that the ordinance adopted on August 7, 1986 validly levied an inheritance tax which remained in effect until Chapter 28A was validly reordained by the December 19, 1987 ordinance. The latter ordinance validly levied an inheritance tax that apparently continues to remain in effect.
Retroactivity
Several of the consolidated cases involve decedents who died between July 10, 1986, the purported effective date of the invalid first ordinance, and August 7, 1986, the date of passage of the second ordinance. Inasmuch as the transmission of the property included in these successions was not validly taxed by the first ordinance, plaintiffs attack the validity of the provision which made the second ordinance retroactive to July 10, 1986.
In Succession of Levy, 115 La. 377, 39 So. 37 (1905), aff'd sub nom. Cahen v. Brewster, 203 U.S. 543, 27 S.Ct. 174, 51 L.Ed. 310 (1906), the decedent died on May 26, 1904, and his will was probated four days later. However, the succession was still under administration when the Legislature enacted an inheritance tax on June 28, *1232 1904. The legislation provided that the tax was "to be collected on all successions not finally closed and administered upon, and all successions hereafter opened".
In response to an attack on the legislation as unconstitutionally disturbing vested rights, this court held that "the assessment and judgment for taxes against a succession, as such, are legal, when the heirs have not obtained a decree of court recognizing and putting them in possession". Id. 39 So. at 38. The court reasoned that while the doctrine of seizin transmits property immediately upon the death of the owner to his living heirs and legatees, the succession is considered opened and unsettled until the heirs and legatees go into possession. The court noted that since the tax is a tax on the transmission of property by will or by descent, the Legislature may subject succession property to the tax as long as the succession remains in the hands of executors.
On appeal to the United States Supreme Court, the executor asserted that the decision of this court contradicted the holding of Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969 (1900), which defined an inheritance tax as one on the transmission of property from the dead to the living. The Court rejected this contention, explaining:
[T]hese definitions were intended only to distinguish the tax from one on property, and it was not intended to be decided that the tax must attach at the instant of the death of a testator or intestate. In other words, we defined the nature of the tax; we did not prescribe the time of its imposition. To have done the latter would have been to prescribe a rule of succession of estates and usurp a power we did not and do not possess. There is nothing, therefore, in those cases which restrains the power of the State as to the time of the imposition of the tax. It may select the moment of death, or it may exercise its power during any of the time it holds the property from the legatee." It is not," we said in the Perkins case, "until it has yielded its contribution to the State that it becomes the property of the legatee."
Cahen v. Brewster, 203 U.S. at 550-51, 27 S.Ct. at 176 (emphasis added).
In Succession of Stauffer, 119 La. 66, 43 So. 928 (1907), the executors contended that the heirs and legatees became vested of the inheritance by operation of law immediately upon the decedent's death, which was prior to the passage of the inheritance tax statute. They argued that the vested rights could not constitutionally be affected. The court disagreed, stating:
By the fiction of the law, "le mort saisit le vif," the heir is seised of right, but not in fact, until he accepts the succession and is sent into or takes possession according to law. As long as the property is under administration it remains in the custody of the law, and the rights of heirs and legatees are in abeyance until the administration is closed.... The transmission of the property so received is the inheritance taxable under our Constitution and statutes. Hence until this transmission is effected the inheritance is taxable.
Id. 43 So. at 929 (emphasis added).
Plaintiffs rely on Untermyer v. Anderson, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645 (1928), which held that a gift tax could not be constitutionally levied on an inter vivos gift that was fully consummated prior to enactment of the taxing legislation and was not made in contemplation of death. Since the property in that case was fully vested prior to the enactment of the tax, the decision does not affect the rationale of the Levy and Stauffer cases.
The Levy and Stauffer cases, which involved an inheritance tax enacted while the succession property remained in the hands of the executor, held that the tax could be levied on the succession property without violating the Louisiana Constitution. The Cahen case (Levy on appeal) held that the states may utilize the point of transmission to the heirs and legatees by judgment of possession as the time of vesting without violating the United States Constitution. We decline to disturb the long-standing position maintained by this court since the initial enactment of the inheritance tax law.
*1233 Decree
The judgment of the district court is affirmed in part insofar as the judgment declared unconstitutional the municipal inheritance tax on tangible movables which had acquired a situs outside the City of New Orleans at the time of the owner's death. In all other respects, the judgment of the district court is reversed. The case is remanded to the district court to grant appropriate relief to those plaintiffs who are entitled to relief under this opinion.
WATSON, J., dissents and assigns reasons.
MARCUS, J., dissents for reasons assigned by WATSON, J.
WATSON, Justice, dissenting:
The doctrine of preemption resolves conflicts of law in circumstances where the laws of a superior legislative body preempt those of an inferior body. Under the supremacy clause of the United States Constitution, state law is preempted by federal law when the two conflict. The system of government set out in the Louisiana Constitution of 1974 establishes the state as the primary authority and gives municipalities secondary governmental authority. Cities, like parishes and other governmental bodies, are denominated as "political subdivisions" of the state. This is "the prevalent American political theory ... that the state antedates the municipal corporation...."[1]
Preemption may be explicit or implied. Express preemption is found in the Constitution[2] and the jurisprudence.[3] The Constitution grants municipalities which do not operate under a home rule charter all the authority necessary to govern which is not denied by general law.[4] The City of New Orleans is governed by a Home Rule Charter,[5] but "shall, however, not exercise any power or authority which is inconsistent or in conflict with any general law."[6] The city's inheritance tax is preempted if it is inconsistent with or in conflict with a general law of the state.
Implied preemption occurs when the state legislature has comprehensively regulated a certain field: when an area is occupied by state law, municipalities and other political subdivisions are preempted. It is a "settled rule that a subordinate political subdivision of the state cannot enact ordinances in a field which is preempted or occupied by the laws and Constitution of the United States or of the State of Louisiana...." Rollins Environmental Serv. v. Iberville Parish, 371 So.2d 1127, 1131 (La.1979).
Rollins concerned the efforts of the Iberville Parish police jury to ban the disposal of industrial waste. It held that the field of hazardous waste disposal had been comprehensively regulated by Congress with a specified and limited role prescribed for the states. The police jury's enactments, though not in direct conflict with the federal legislation, would ultimately frustrate *1234 the congressional purpose of providing a uniform national plan for the disposal of hazardous waste. Permitting local governmental units to ban or regulate waste disposal in their jurisdictions would be an obstacle to execution of that purpose.
Rollins states a rule for determining when a field has been preempted: whether the state legislature has enacted general laws on the subject which preempt that field of regulation.[7] "It is fundamental that a municipality cannot adopt ordinances which infringe the spirit of state law, or are repugnant to the general policy of the State."[8]

Randolph v. Village of Turkey Creek, 240 La. 996, 126 So.2d 341 (1961) held that legislative intent, illustrated by detailed regulations, may show that the state has preempted a field.
In 1828 the State of Louisiana became the second in the nation to levy a death tax.[9] The state's proportional inheritance tax has since been amended to provide certain exemptions and to adjust reporting and collection procedures.[10] Act 119 of 1932[11] added an estate transfer tax in response to federal tax laws.
The Internal Revenue Service allows a credit for state death taxes.[12] Louisiana's estate transfer tax insures that the state receives the full amount of that credit.[13] Under this procedure, the taxpayer pays the state inheritance tax, then calculates any federal tax due,[14] minus the allowable credit.[15] If the federal tax credit is greater than the state inheritance tax, the difference is paid to the state as an estate transfer tax. If the federal credit is satisfied by the state inheritance tax, the taxpayer owes nothing more to the state.[16]
Some succession representatives have offset the city tax against the state credit, thus depriving the state of revenue. Alternatively, imposing the city's tax in addition to the state's tax conflicts with the state's scheme of using the federal tax credit as a ceiling on state and local taxation.
Louisiana's inheritance and estate transfer taxes constitute a comprehensive legislative scheme. The plan was expressly formulated to insure that the full amount of the federal tax credit accrues to the state's benefit.[17] The state death and estate tax scheme is a general law within the constitutional meaning. Together with federal tax law, it occupies the entire field of inheritance taxation. General laws of the state are paramount and preempt local legislation in this area.
*1235 The city inheritance tax ordinances[18] are an unconstitutional exercise of authority in an area preempted by state and federal legislation. I respectfully dissent.

ON APPLICATION FOR REHEARING
PER CURIAM.
On application for rehearing, plaintiffs challenge this court's statement on original hearing that "[i]nasmuch as taxpayers cannot take a credit for municipal inheritance taxes on the federal estate tax return, there will be no less revenue for the State resulting from the levy of a municipal inheritance tax". Plaintiffs argue that a municipal inheritance tax is applicable to the federal credit set forth in 26 U.S.C. § 2011(a) (1982).[1] Plaintiffs argue that the word "State" in the statute includes a state and any political subdivision of the state. They therefore contend that a municipal inheritance tax, entitled to a federal credit, will result in less revenue for the State and is therefore inconsistent and in conflict with state law.
This court misspoke in discussing whether a taxpayer receives credit for municipal inheritance taxes on the federal estate tax return. However, this court's statement, whether correct or not, was not necessary to the decision. The primary focus of the decision was on the effect of a municipal inheritance tax on the Louisiana estate transfer tax.
The Legislature has levied an inheritance tax in La.R.S. 47:2401 (which is in Part I of Chapter 1 of Subtitle IV of Title 47) and an estate transfer tax in La.R.S. 47:2431 (which is in Part II). La.R.S. 47:2432 A, pertaining to the amount of estate transfer tax, provides:
Whenever there is a credit allowed under the United States Internal Revenue Code as to the amount of the federal estate tax for amount of state death taxes, the maximum amount of the credit for the state death taxes shall be paid to the State of Louisiana. However, if the state inheritance taxes paid under Part I of this chapter exceed the federal credit, no additional payment will be due under Part II of this chapter. If the federal credit does exceed the inheritance taxes due under Part I of this chapter, then the difference between the amount of the federal credit and the amount of state inheritance tax shall be paid to the State of Louisiana. (emphasis added).
Thus, a taxpayer must pay to the State both the state inheritance tax and the estate transfer tax, which (when the federal credits exceed the tax due under Part I) is the difference between the amount of the federal credit and the "amount of state inheritance tax". Louisiana law requires payment to the State of both the state inheritance tax levied in Part I and the estate transfer tax levied in Part II (which together add up to the amount of federal estate tax credit for state death taxes), whether or not municipal inheritance taxes are eligible for credit on federal estate tax returns.[2] Therefore, this court correctly *1236 noted on original hearing that the levy of the municipal inheritance tax does not result in less revenue for the State.
The application for rehearing is denied.
MARCUS and WATSON, JJ., would grant a rehearing.
CALOGERO, J., concurs in these Per Curiam reasons and would thus deny the applications of Hildebrand, et al., and McDermott, Jr., et al.; he would grant the applications of the Whitney National Bank and Richard G. Hirsch and assigns reasons.
CALOGERO, Justice, concurring in part and dissenting in part regarding denial of rehearing application.
I concur in denying the rehearing applications of Hildebrand, et al, and McDermott, Jr., et al, and subscribe to this per curiam opinion. However, I would grant the rehearing applications of the Whitney National Bank, Executor and Trustee under the Will of Violet Wilson Frederick and on behalf of Rose Fenasci and Carol Wilson, and Richard G. Hirsch, as Testamentary Executor of the Succession of Jeanne Godchaux, Widow of Ariel B. Newman, Jr., applications which raise a single issue, that is the contention that the city inheritance tax, as a retroactive tax, unconstitutionally discriminates against the heirs of those whose deaths occurred after enactment of the invalid first city inheritance tax ordinance and before the enactment of the second ordinance, vis-a-vis the heirs of those whose deaths occurred before enactment of the first ordinance, and deprives these heirs of vested property rights without due process of law.
NOTES
[1] The judgment of the lower court granted plaintiffs the totality of the relief sought, that is, declaration of unconstitutionality of the ordinances. Although the district court did not rule on all of plaintiffs' arguments attacking the ordinances, it was not necessary for plaintiffs to answer the appeal in order to preserve their right to present these alternative arguments in support of the judgment. An appellee need only answer the appeal when he seeks to attack or modify some portion of the judgment, but a party may assert any argument in support of the judgment even though he has not appealed, answered the appeal, or applied for certiorari. See Logan v. Louisiana Dock Co., 541 So.2d 182 (La.1989); see also La.C.C.P. art. 2133, amended by Acts 1989, No. 438.
[2] A 1959 amendment to the 1921 Constitution declared the City of New Orleans "to have a home rule charter consisting of Act 159 of 1912".
[3] La. Const. art. VI, § 4 provides:

Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions. (emphasis added).
[4] The provision for the maximum rate was made statutory by La. Const. art XIV, § 16(A)(7) and then repealed by Acts 1975, No. 159, after which there was no longer any limitation on the City's power to levy an inheritance tax.
[5] The decision in the Town of Wytheville v. Johnson's Executor, 108 Va. 589, 62 S.E. 328 (Va.1908), relied on by the trial court, does not suggest a different result. In that case the Town's legislative authority to levy taxes contained an extensive list of authorized taxes, but an inheritance tax was not included in the list. The grant of authority in the present case was to levy all taxes not prohibited by or inconsistent with the Constitution.
[6] La. Const. art. III, § 12(A)(2) provides:

(A) Except as otherwise provided in this constitution, the legislature shall not pass a local or special law:
(2) Changing the names of persons; authorizing the adoption or legitimation of children or the emancipation of minors; affecting the estates of minors or persons under disabilities; granting divorces; changing the law of descent or succession; giving effect to informal or invalid wills or deeds or to any illegal disposition of property. (emphasis added).
[7] La. Const. art. VI, § 9 provides in full:

(A) No local governmental subdivision shall (1) define and provide for the punishment of a felony; or (2) except as provided by law, enact an ordinance governing private or civil relationships.
(B) Notwithstanding any provision of this Article, the police power of the state shall never be abridged.
[8] The Civil Code governs the ownership of property, but the Constitution permits a local service charge on owners of immovables, Acorn v. City of New Orleans, 377 So.2d 1206 (La.1979), and a local road use charge on owners of automobiles, Acorn v. City of New Orleans, 407 So.2d 1225 (1981). The Civil Code also regulates sales, but the Constitution permits local sales taxes. See Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11 (1941), in which this court was presented with an attack on a municipal sales tax (one of the first in the nation) and applied Act 338 of 1936 to confirm the City's right to impose any tax not prohibited by the Constitution or preempted by state law.
[9] An inheritance tax is not a tax on property, but rather on the transmission of property upon the death of the decedent. See Succession of Henderson, 211 La. 707, 30 So.2d 809 (1947), in which this court noted that an estate tax payable by the estate is a tax on the transmission of the entirety of the estate property at death, while an inheritance tax payable by each heir or legatee is a tax on the transmission of the component parts of the estate at death. The original federal inheritance tax was held to be an indirect tax on the transfer of property and not a direct tax on property. Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969 (1900).
[10] Article VI provides the powers and limitations of local government. Sections 1 through 8 set forth home rule powers, while Section 9 provides limitations on those powers. Later sections of Article VI address taxing powers and limitations.
[11] The proposition cited from Hillsborough is a basic statement of equal protection law. The issue in Hillsborough was whether the taxpayer's limited remedy in state court to proceed against other members of his class for an increase in their taxes was an adequate remedy.
[12] The scheme of the City's taxing ordinances divides the property subject to taxation upon transmission at death into four categories: (1) immovables situated in the City, (2) tangible movables situated in the City, (3) tangible movables owned by a City domicilliary, wherever situated, and (4) intangible movables owned by a City domicilliary, wherever situated. Plaintiffs do not contest the tax (if otherwise valid) as to immovables and tangible movables situated in the City.
[13] The language of the ordinances at issue tracks that of the state inheritance tax law. Scholarly commentary has suggested that the State cannot constitutionally tax tangible movables which are located outside Louisiana. L. Oppenheim, 10 Louisiana Civil Law Treatise: Successions and Donations § 262 (1972) (Part VI by M. Nathan).
[14] The danger of taxation by several states is slight because the individual states have almost uniformly chosen to use the state of the decedent's domicile to levy death taxes. Note, Due Process Limits on State Estate Taxation: An Analogy to the State Corporate Income Tax, 94 Yale L.J. 1229 (1985). However, the danger of multiple taxation does exist, principally because more than one state may claim that the decedent was a domicilliary at the time of death. See In re Dorrance's Estate, 309 Pa. 151, 163 A. 303, cert. denied 287 U.S. 660, 53 S.Ct. 222, 77 L.Ed. 570 (1932), and Dorrance v. Martin, 116 N.J.L. 362, 184 A. 743, cert. denied 298 U.S. 678, 56 S.Ct. 950, 949, 80 L.Ed. 1399 (1936), which resulted in the levy of separate estate taxes by two states. Nevertheless, the danger of multiple taxation is practically non-existent in state courts because domicile is generally a question of state law. (In the Dorrance litigation there were actions filed in two states. In each of the two separate actions the state court found that the taxing authority had produced sufficient evidence to form a reasonable basis for the finding of the fact of domicile. Such a finding by a state court was essentially unreviewable in the federal courts.) If two Louisiana district courts reach conflicting decisions on domicile in separate municipal inheritance tax cases, an appellate court has the authority to resolve the conflict which the parties will undoubtedly point out.
[15] As stated earlier, the framers of the Constitution, when they desired to grant sole taxing authority to the State in certain areas (such as income taxation), did so in the clearest terms. See La. Const. art. VII, § 4(C).
[16] Preemption is more frequently involved in the exercise of police power rather than taxing power. Much of plaintiffs' argument on preemption relates to the purported conflict between the ordinances and the State's exercise of its police power, which was discussed extensively in this opinion in the treatment of the asserted violation of La. Const. art. VI, § 9. See also City of New Orleans v. State, Department of Corrections, 364 So.2d 1020 (La.1978).
[17] The Internal Revenue Code provides a credit for state death taxes against the amount of estate taxes owed to the federal government.

The estate transfer tax was enacted by the Louisiana Legislature in 1932 in order to take advantage of the total amount of credit allowed on federal estate tax returns for state inheritance taxes. The practical effect of the tax was to utilize any unused portion of the federal estate tax credit.
The estate transfer tax is the difference between the amount of federal credit and the amount of state inheritance tax. Thus, when the federal credit is greater than the state inheritance tax, the estate transfer tax channels the difference in amount to the State, with no resulting increase in the total taxes paid by the estate. But when the state inheritance tax exceeds the federal credit, no estate transfer tax is levied.
[18] The Rollins case turned in part on a conflict between the exercise by the police jury of its police power and the State's regulation of environmental quality. This court stated, "[i]t is apparent that the substances the State has chosen to regulate are the same substances prohibited in the ... ordinance". Id. at 1134.
[19] The federal tax credits are purely a matter of legislative grace and can be repealed by Congress at any time. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934). Withdrawal of the federal credit would not affect the right of the several states to impose an inheritance tax. See Estate of Fasken, 19 Cal.3d 412, 563 P.2d 832, 138 Cal.Rptr. 276, cert. denied, 434 U.S. 877, 98 S.Ct. 230, 54 L.Ed.2d 157 (1977). In Fasken, the California Supreme Court held that when an estate consists of multistate property, each of several states may levy an inheritance tax measured by the property within that state's boundaries, the amount of which tax is not limited by or otherwise dependent in any way on the federal credit for state death taxes. However, the court noted that a state making a claim to the credit differential created by federal estate tax law is limited to that portion attributable to property within that state. The court further stated that even a single state may levy and collect, without raising a jurisdictional question, an inheritance tax which by itself exceeds the federal credit.
[20] In the consolidated case of First National Bank of Commerce in New Orleans as Executor of the Succession of Mrs. Ida Lise Black Rodgers v. City of New Orleans, the decedent's property was inherited by her spouse and son. Both the spouse and the son died before the inheritance tax return was filed. Plaintiffs emphasize that if the tax is imposed at the moment of death, rather than at the time the state tax return is filed, the heirs and legatees of the spouse and son would be subject to two separate taxations.
[21] Rule 1 of the Council's Rules and Regulations provides that the regular meetings shall take place on the first and third Thursdays of each month. The July 10 meeting was not a regular meeting.
[1] 2 McQuillin, Municipal Corporations, Sec. 9.01 (3d ed.1988).
[2] See, for example, Art. 6, § 9 of the Louisiana Constitution of 1974 which prohibits local governmental subdivisions from enacting laws which define a felony or govern a civil relationship.
[3] See, for example, City of New Orleans v. State of Louisiana, 364 So.2d 1020 (La.1978). The City had acted under a constitutional provision expressly granting zoning authority to local governmental subdivisions. Nevertheless, when the state's proposed use of its facility at Jackson Barracks conflicted with the City's zoning ordinances, the city's enactments were held to be preempted by the state's exercise of its police power.
[4] Art. 6, § 7, Louisiana Constitution 1974. "General law" is defined in Art. 6, § 44(5) as follows:

"General law" means a law of statewide concern enacted by the legislature which is uniformly applicable to all persons or to all political subdivisions in the state or which is uniformly applicable to all persons or to all political subdivisions within the same class.
[5] The Home Rule Charter of New Orleans was enacted by Act No. 159, La. Acts 1912. It was affirmed by Art. 14, § 22 of the 1921 Constitution, amended by Act No. 338 of 1936 and Act No. 551 of 1950. It was retained by the 1974 Constitution, Art. 6, § 4.
[6] Art. 14, § 22, 1921 Constitution. See also Section 40(d), added by amendment to Art. 14 in 1952, stating that the general laws of the legislature are "paramount."
[7] Rollins at 1131, citing State v. Sissons, 292 So.2d 523 (La.1974); National Foods Stores of Louisiana, Inc. v. Cefalu, 280 So.2d 903 (La. 1973); City of Minden v. Davis Bros. Drug Company, 195 La. 791, 197 So. 505 (1940). Also see definition of general law at footnote 4, supra.
[8] City of Minden v. David Bros. Drug Co., supra, 197 So. at 508.
[9] La. Act 95 of 1828; Comment, The Louisiana Inheritance and Estate Taxes, 22 Tul.L.Rev. 635 (1948).
[10] LSA-R.S. 47:2401, et seq.
[11] Codified at LSA-R.S. 47:2431, et seq.
[12] 26 U.S.C. § 2011 entitled "Credit for State Death Taxes,"

(a) In general.The tax imposed by Section 2001 shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or the District of Columbia, in respect of any property included in the gross estate (not including any such taxes paid with respect to the estate of a person other than the decedent).
[13] This is a type of federal-state revenue sharing, calling for some form of coordinating legislation by the state. For example, on March 13, 1987, Nevada became the last state in the union to levy a tax on decedents' estates. The Nevada tax is equal to the allowable federal credit. Nev.Rev.Stat. § 375A.100 (1987).
[14] 26 U.S.C. § 2001.
[15] 26 U.S.C. § 2011.
[16] LSA-R.S. 47:2432(A).
[17] LSA-R.S. 47:2434 is entitled "Intent and Purposes of this Part" and reads:

It is hereby declared to be the intent and purpose of this Part to obtain for this state the benefit of the estate tax credit allowed under the provisions of the United States Internal Revenue Code, to the extent that the state may be entitled under the said provisions, by imposing additional taxes. This Part shall be liberally construed to effect that purpose.
[18] No. 11,262 M.C.S.; No. 11,337 M.C.S.; and No. 12,147 M.C.S.
[1] 26 U.S.C. § 2011(a) (1982) provides:

The tax imposed by section 2001 shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or the District of Columbia, in respect of any property included in the gross estate (not including any such taxes paid with respect to the estate of a person other than the decedent). (emphasis added).
[2] Thus, if a credit of $100,000 is allowed for state death taxes, and if the taxpayer has paid $40,000 in state inheritance taxes and $40,000 in municipal inheritance taxes, the estate transfer tax under the clear terms of La.R.S. 47:2432 is $60,000, not $20,000. The State is entitled to $60,000 in estate transfer taxes, whether or not the federal government allows a credit for municipal inheritance taxes. After the Louisiana estate transfer tax of $60,000 is paid to the State as required by law, it matters not whether the federal government would have allowed a $40,000 credit for municipal inheritance taxes. With payment of $40,000 in Louisiana inheritance tax, $60,000 in Louisiana estate transfer tax, and $40,000 in City of New Orleans inheritance tax, the full $100,000 federal credit would have been utilized by the estate.