Dear Mr. Power:
You requested the opinion of this office with respect to whether it is permissible for the City of Kenner to pledge $1 million of accumulated surplus, a dinner theatre tax, a sales tax from the dinner theatre, and a portion of a hotel occupancy tax, to a $1.6 million loan made by a financial institution to the South Kenner Development Corporation ("SKDC"). In addition, if the city can legally make such a pledge, you ask if the City of Kenner must first obtain permission to do so from the State Bond Commission.
You advised that SKDC is a private, non-profit corporation whose primary purpose is to promote and encourage the economic development of South Kenner in order to insure greater economic opportunities, encourage and assist the growth and development of business concerns, increase and sustain purchasing power of the economic sector, and stimulate and encourage the expansion of business and industry for the citizens of the City of Kenner. SKDC has, or will, engage in this cooperative endeavor with the City of Kenner to provide services for a public purpose, namely, providing financial assistance and housing to small and medium size for-profit businesses in the South Kenner area and sponsor projects for same with funding provided by the City and through federal programs. The staff for SKDC is provided by the City.
In furtherance of this endeavor, SKDC will loan $600,000 in funds provided through the City and guaranteed by HUD under Section 108 of Title I of the Housing and Community Development Act of 1974, to Belle Rive Dinner Playhouse Ltd. ("Belle Rive") to purchase two squares of property. Belle Rive, a limited partnership, will be the lessee and operator of the dinner theatre.
SKDC will also borrow $1.6 million from a major financial institution to purchase one of the squares of property purchased by Belle Rive in the amount of $454,000, the same amount for which Belle Rive will have purchased it. The balance of the loan will be used by SKDC to construct the dinner theatre and parking area on this square of property and to purchase fixtures and equipment. The financial institution will have a first mortgage on this property, and the mortgage resulting from the loan of grant funds will be subordinated to the financial institution's mortgage. Belle Rive will lease the land, building, and fixtures from SKDC with the assignment of the lease to the financial institution.
To aid SKDC in the repayment of this $1.6 million loan, the City of Kenner wishes to pledge $1 million of accumulated surplus, the proceeds of a planned dinner theatre tax, one and one-third percent of the sales tax derived from the dinner theatre, and a hotel occupancy tax.
The first question presented is whether the above described scheme violates Article VII, Section 14 of the Louisiana Constitution which provides as follows in pertinent part:
 "Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . ."
Section 14(B) of the 1974 Constitution provides an exception to the general rule stated above, in pertinent part as follows:
 "Nothing in this Section shall prevent (1) the use of public funds for programs of social welfare for the aid and support of the needy . . ."
It has already been determined by this office that the loan guaranty of a Community Development Block Grant for the acquisition of land and theatre equipment of a theatre restaurant is part of "a program of social welfare for the aid and support of the needy." Op. Atty. Gen. No. 89-242. That opinion was based upon the regulations concerning Community Development Block Grants whose primary objective is stated in 24 CFR 570.2 to be "the development of viable urban communities, by providing decent housing and a suitable living environment and expanding economic opportunities, principally for persons of low and moderate income." The creation of jobs for the construction of this project and for the operation of the restaurant and theatre support the conclusion found in Op. Atty. Gen. No. 89-242.
Whenever the legal duty or obligation to expend public funds is derived from the constitution, a public benefit and purpose will be presumed. Op. Atty. Gen. No. 90-651. The exceptions contained in Article VII, Section 14(B) authorize certain kinds of donative-type expenditures and thereby implicitly recognize that such expenditures are necessary for the inherent functions and duties of government. Thus, the pledge of funds to support the repayment of a loan which is used to aid the needy is not prohibited by Article VII, Section 14(A) of the Louisiana Constitution.
While it may be constitutionally permissible to pledge certain funds and/or taxes, the question arises as to whether there is statutory authority for such pledges?
R.S. 39:1410.60, et seq. provides the general framework of instances where the approval of the State Bond Commission is required for local government finances. Sections 1410.60(A) provides as follows:
 "No parish, municipality, public board, political or public corporation, subdivision, or taxing district, created under or by the constitution and laws of the state shall have authority to borrow money, incur debt, or to issue bonds, or other evidences of debt, or to levy taxes, or to pledge uncollected taxes or revenues for the payment thereof, where they are authorized by the constitution or laws of the state so to do, without the consent and approval of the State Bond Commission. (Emphasis supplied.)
Therefore, in order for the City of Kenner to pledge taxes or revenues there must be statutory authorization for same.
Concerning the proposed pledge of the $1 million surplus, the only possible statutory authorization for such a pledge that the undersigned is aware of is R.S. 33:2922, which authorizes the dedication of future revenues above the statutory, necessary and usual charges for a maximum period of ten (10) years. In order to use this procedure, there must be excess revenues shown in the current budget of the City.
Concerning the proposed dinner theater tax, the undersigned was unable to find any specific statutory authorization for the levy and collection of such a tax. While the undersigned was advised that the City of Kenner operates under a home rule charter and was sent a copy of same, the undersigned's review of the charter did not reveal the power to levy any tax not in violation of or inconsistent with the Louisiana Constitution, similar to the home rule charter of the City of New Orleans. The Louisiana Supreme Court held in Hildebrand v. City of New Orleans, 549 So.2d 1218 (La. 1989) that the City of New Orlean's reservation in its home rule charter of the power to levy any tax not prohibited by or inconsistent with the constitution, authorized the imposition of an inheritance tax. As the City of Kenner does not have a similar provision in its home rule charter, in order to impose a dinner theater tax there must be statutory authorization for same, which the undersigned did not find. It is therefore the opinion of this office that the City of Kenner cannot validly levy a tax on the dinner theater and therefore, there will be no tax proceeds to pledge.
Concerning the pledge of a portion of the sales taxes, the undersigned was unable to obtain information concerning the sales tax which would be dedicated, the purposes for which the taxes were authorized, the length of the tax and any other relevant information to determine whether or not the specific tax could be pledged. Prior to a review by the State Bond Commission that information would have to be supplied, together with the statutory authorization for the pledge and the proposed length of the pledge to ensure compliance with state law.
Concerning the hotel occupancy tax levied pursuant to R.S. 33:2740.18, there is authority for the issuance of bonds secured by said tax; however, the undersigned is aware of no authority for the pledge of same. Therefore, it is the opinion of this office that same cannot be pledged without the issuance of bonds.
As to whether State Bond Commission approval is needed, R.S. 39:1410.60
quoted above requires the approval of the Bond Commission in order to pledge revenues as does R.S. 39:1410.61 which provides in pertinent part as follows:
 "Before incurring any debt, holding any election to authorize the incurring of any debt or the levy of any special tax, borrowing any money for any purpose whatever, issuing any bonds or other evidences whatever of debt, levying any tax or pledging any tax or revenue or income for the payment of any such bonds or debt, where they are authorized so to do by the constitution and the laws of this state, every such governmental agency of the state of Louisiana named in R.S. 39:1410.60 shall obtain the consent and approval of the commission. (Emphasis supplied.)
Therefore, it is the opinion of this office that the approval of the State Bond Commission is needed before any of the permissible pledges can be made.
Trusting this to adequately responds to your request, I remain
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 BY: MARTHA S. HESS Assistant Attorney General