818 So.2d 1 (2001)
DAIQUIRI CAFE SHERWOOD INC., d/b/a Daiquiri Café
v.
PARISH OF EAST BATON ROUGE and the City of Baton Rouge.
No. 2000 CA 1745.
Court of Appeal of Louisiana, First Circuit.
November 9, 2001.
*2 David J. Halpern, Metairie, LA, for plaintiff/appellant, Daiquiri Café Sherwood, Inc. d/b/a Daiquiri Café.
Eugene A. Booth and Michael E. Ponder, Baton Rouge, LA, for defendant/appellee, Parish of East Baton Rouge and The City of Baton Rouge.
BEFORE: FITZSIMMONS, WEIMER and DOWNING, JJ.
DOWNING, J.
This appeal challenges the action of the trial court in denying an injunction that would have precluded East Baton Rouge Parish/City of Baton Rouge from enforcing an ordinance that limits alcoholic beverage sales on Sunday because the ordinance was not first submitted to a public vote. Daiquiri Café Sherwood, Inc. argues that the ordinance is in violation of La.R.S. 51:191, the statute enacted in 1986 allowing local governments to enact ordinances restricting Sunday sales of alcohol so long as the "blue laws" are presented to the people for a vote. After a thorough review of the record, we affirm the trial court.

FACTS AND PROCEDURAL BACKGROUND
Plaintiff, Daiquiri Café Sherwood, Inc. (Daiquiri Café), filed a petition for declaratory judgment and injunction to enjoin the Parish of East Baton Rouge and the City of Baton Rouge (Baton Rouge City/Parish) from enforcing § 5 of Wine, Beer and Liquor Ordinance No. 11626, enacted December 8, 1999. Daiquiri Café argued the ordinance was invalid without a public referendum in accordance with La.R.S. 51:191.
At a March 29, 2000 hearing, after hearing the evidence and argument of counsel, the trial court entered judgment denying the request for declaratory relief and preliminary and permanent injunction. Judgment was signed on May 25, 2000.
Daiquiri Café appealed alleging three assignments of error:
1. The trial court erred in denying the declaratory relief;
2. The trial court erred in denying the preliminary and permanent injunction;
3. The trial court erred in concluding that pursuant to Art. 6 § 4 of the 1974 Constitution, Home Rule Charter authorizes the City to enact § 5 of Ordinance No. 11626 without a vote of the electorate as required by La.R.S. 51:191.

*3 STANDARD OF REVIEW

In reviewing factual findings, the appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). For an appellate court to reverse a trial court's factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record. See Gonzales v. Xerox Corporation, 320 So.2d 163, 165 (La.1975); State, Louisiana Riverboat Gaming Commission v. Louisiana State Police Riverboat Gaming Enforcement Division, 95-2355, p. 5 (La.App. 1 Cir. 8/21/96), 694 So.2d 316, 319.

DISCUSSION
This controversy arose after the Baton Rouge City/Parish restricted Sunday alcoholic beverage sales by adopting Ordinance No. 11626 without first having a referendum vote. Ordinance No. 11626 restricts the opening and closing of businesses serving alcohol on Sunday. The Baton Rouge City/Parish enacted this ordinance without first holding a public election to allow voters to decide the matter. Louisiana Revised Statutes 51:191, however, provides that a parish or municipality may adopt ordinances regulating or prohibiting the opening of certain businesses and/or the sale of certain stock or articles of merchandise on Sunday, if approved by the voters at an election (emphasis added) called as provided in Chapter 6-B of Title 18 of the Louisiana Revised Statutes of 1950. Daiquiri Café asserts that enactment of this ordinance contravened the state police power as manifested by La. R.S. 51:191. See City of Zwolle v. Polk, 93-1102 (La.App. 3 Cir. 9/14/94), 643 So.2d 201.
We begin our analysis with a short Home Rule Charter history. Article VI, § 4 of the Louisiana Constitution of 1974 provides:
Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions.
Accordingly, Art. VI, § 4 allows a preexisting home rule charter municipality, as is the Baton Rouge City/Parish, the power to initiate legislation so long as the ordinance is not inconsistent with the constitution and is not an abridgment of the police power of the state. City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-0690, p. 2 (La.7/5/94), 640 So.2d 237, 241.
In contrast, a local government subdivision that acquires home rule powers subsequent to the adoption of the 1974 constitution is authorized to exercise such powers only when "necessary, requisite, or proper for the management of its affairs." La. Const.1974, Art. VI §§ 5(E) and 7; City of New Orleans v. Board of Commissioners of the Orleans Levee District, 93-0690 at p. 9, 640 So.2d at 244.
The Louisiana Supreme Court noted in City of New Orleans v. Board of Commissioners *4 of the Orleans Levee District, 93-0690 at p. 9, 640 So.2d at 244, "The nature or content of the (municipality's) power to initiate legislation is determined by the provisions of the preexisting charter maintained in effect by the 1974 state constitution and amendments thereto, if any, adopted pursuant to the charter."
Baton Rouge City/Parish asserts that it is a Home Rule Charter Political Subdivision, and has been so since before the adoption of the Louisiana Constitution in 1974. Louisiana Constitution Article VI, § 4 provides that local governmental subdivisions with home rule charters retain their existing powers, functions and duties. Home Rule Charter political subdivisions enjoy a greater autonomy than communities without such pre-existing charters. See Id. By the 1974 Louisiana Constitution, the legislature delegated powers and functions to the Baton Rouge City/Parish giving it discretion to utilize its powers and functions on the local level. No state law may revoke, change or affect the home rule government's discretion to utilize its powers and functions, unless it is necessary to prevent the abridgment of the reasonable exercise of the state's police power. Francis v. Morial, 455 So.2d 1168, 1171 (La.1984). And "[t]he inalienability of the police power ... does not preclude its delegation to municipalities and other governmental subdivisions because these entities are part of the total government of the state." City of New Orleans, 93-690 at 21, 640 So.2d at 249. When a party claims that a home rule municipality's local law abridges the police power of the state:
[the party] must show that the local law conflicts with an act of the state legislature that is necessary to protect the vital interest of the state as a whole. To establish that the conflict actually exists, the litigant must show that the state statute and the ordinance are incompatible and cannot be effectuated in harmony. Further, to demonstrate that the state statute is "necessary" it must be shown that the protection of such state interest cannot be achieved through alternate means significantly less detrimental to home rule powers and rights.
City of New Orleans, 93-0690 at 27, 640 So.2d at 252.
Here, even if we accept that enactment of the local ordinance is in conflict with La.R.S. 51:191, Daiquiri Café has failed to show how implementation of La.R.S. 51:191 is necessary to protect the vital interest of the state as a whole. It has failed to show that the state statute and the ordinance are incompatible and cannot be effectuated in harmony. It has failed to show that the protection of such state interest cannot be achieved through alternate means significantly less detrimental to home rule powers and rights.
The crux of Daiquiri Café's argument is that La.R.S. 51:191 prohibits the ordinance from being enacted without a referendum vote by the electorate and that Baton Rouge City/Parish cannot rely on its earlier "blue law" ordinance being "grandfathered" because the ordinance has been substantially changed since its enactment in 1957. As authority for this position Daiquiri Café cites the decision in City of Zwolle v. Polk, 93-1102 (La.App. 3 Cir. 9/14/94), 643 So.2d 201, where the court held that the community of Zwolle's "blue law" ordinance was invalid because it had not been approved by the voters. The community of Zwolle, however, unlike the community of Baton Rouge City/Parish, did not have a home rule charter prior to the 1974 constitution. Therefore, Zwolle could not fall under the pre-existing Home Rule Charter exception. Thus, Zwolle is inapplicable.
Daiquiri Café also cites Pappy's Investment Group of Lake Charles, Inc. v. City of Lake Charles, 96-411, p. 2 (La.App. 3 *5 Cir. 7/24/96), 677 So.2d 1145, 1146, which held that the community of Lake Charles' "blue law" ordinance was invalid because the ordinance had not been presented for the referendum vote even though the community did have a home rule charter in place when the new constitution was adopted. We respectfully disagree with the analysis our brethren on the third circuit employed in deciding Pappy's and Zwolle. As discussed above, the supreme court provided instruction in City of New Orleans, 93-0690 at 27-28, 640 So.2d at 252, on the proper procedure to employ when resolving conflicts between state police measures and the constitutionally protected rights of home rule governments.
Accordingly, we conclude that it is of little moment whether the language of La.R.S. 51:191 is more specific than the language in the Baton Rouge City/Parish Home Rule Charter. We also conclude that it is of little moment whether a specific ordinance was in place in 1974 where an ordinance regulates areas traditionally within the governance of jurisdictions with pre-1974 home rule charters in place. "[U]nless a legislative act by a preexisting home rule government exceeds some limit placed upon its power of initiation by the 1974 Constitution, that government's power of immunity prevents the legislature from reversing, withdrawing, or denying an exercise by that city or parish of its power to enact and enforce that local law." City of New Orleans, 93-0690 at 12, 640 So.2d at 245-246. We note the court in Pappy's conceded in dicta that "had the ordinance been in place as of the effective date of the 1974 Louisiana Constitution, it is arguable that the ordinance would be enforceable, and `grandfathered' under Article VI, § 4...." Pappy's, 96-411 at p. 3, 677 So.2d 1145 at 1146.
Here, we have been favored by the learned trial court's well reasoned and considered oral reasons for judgment. In its oral reasons, the trial court correctly made the following observations:
Unless a legislative act by a preexisting home rule government exceeds some limit placed upon its power of initiation by the 1974 constitution, that government's power of immunity prevents the legislature from reversing, withdrawing or denying an exercise by that city or parish of its power to enact and enforce that local law. And I think this goes beyond what even the dicta in Pappy's Investment case said. I think what the Supreme Court (in City of New Orleans) is talking about in this decision is the power of the city and parish to enact those laws, not just that a particular law itself may have been grandfathered in by the constitution but rather the power and right to enact those laws was grandfathered in by the constitution.
The trial court found that Daiquiri Café failed to prove a compelling state interest applicable to the state as a whole that would require the citizens of East Baton Rouge Parish to vote on the ordinance at issue. We agree. Under its home rule charter, Baton Rouge has the right to regulate the sale of alcoholic beverages. See Brossette v. Alcoholic Beverage Control Board, 611 So.2d 1391, 1393 (La.1993). Moreover, § 20 of its Home Rule Charter grants the Baton Rouge City/Parish Council the authority: "to license, regulate and restrain ... shops for retailing alcoholic liquors ... and to close houses or places for the sale of intoxicating liquors when the public safety may require it, and to authorize the mayor and police to close such places...." Thus the Home Rule Charter expressly authorizes the Council to regulate the hours of operation of retail shops for alcoholic liquors. It is undisputed that Baton Rouge City/Parish has continually exercised its authority to regulate Sunday closures and sales of alcohol since at least since 1957, well before the 1974 Constitution was adopted.
*6 Under the principles outlined in City of New Orleans, Daiquiri Café has failed to prove the Baton Rouge City/Parish violated the state's police power in enacting Ordinance 11626. Louisiana Constitution art. IV, § 4 explicitly retains all local governmental powers in effect under the home rule charters at the time of the adoption of the 1974 Constitution, except as inconsistent with that constitution. Daiquiri Café has proven no such inconsistency. Daiquiri Café has failed to show that strict enforcement of La.R.S. 51:191 is necessary to protect any vital interest of the state as a whole. Further, Daiquiri Café has failed to show that the protection of the state's interest could not be achieved through alternate means significantly less detrimental to home rule powers and rights. Without such proof, we conclude that La.R.S. 51:191 did not require the Baton Rouge City/Parish to hold an election prior to enacting its Ordinance 11626.
In addition, the record and testimony reveal that the subject amendment of 1998 is not as restrictive as those regulations that had been in effect pursuant to the Home Rule Charter as of the time of the Constitution of 1974; nor are the restrictions as severe as those existing immediately prior to the subject amendment.
Accordingly, we conclude the trial court committed no legal or manifest error in denying Daiquiri Café's request for declaratory relief and preliminary and permanent injunction. Daiquiri Café's assignments of error are without merit. We affirm the judgment of the trial court.

CONCLUSION
We affirm the judgment of the trial court. Costs are taxed to Daiquiri Café.
AFFIRMED.
FITZSIMMONS, J. concurs, and assigns reasons.
FITZSIMMONS, Judge, concurring with reasons.
I respectfully concur in the decision reached by the majority. Section 20 of its Home Rule Charter grants the Baton Rouge City/Parish Council the authority: "to license, regulate and restrain ... shops for retailing alcoholic liquors ... and to close houses or places for the sale of intoxicating liquors when the public safety may require it, and to authorize the mayor and police to close such places...." Thus the Home Rule Charter expressly authorizes the Council to regulate the hours of operation of retail shops for alcoholic liquors.
Moreover, in this instance, the record and testimony reveal that the subject amendment of 1998 is not as restrictive as those regulations that had been in effect pursuant to the Home Rule Charter as of the time of the Constitution of 1974; nor are the restrictions as severe as those existing immediately prior to the subject amendment.