CHUTZ, J.
| aPlaintiff-appellant, St. Tammany Parish Government (the Parish), and interve-nor-appellant, Concerned Citizens of St. Tammany (CCST), appeal the trial court’s summary judgment: (1) in favor of Helis Oil <& Gas Company, LLC (Helis Oil), declaring St. Tammany Parish’s zoning ordinances, which prohibited or interfered with the drilling of a well by intervenor-appel-lee, Helis Oil, pursuant to a drilling permit issued by defendant-appellee, the Commissioner of the Office of Conservation of the State of Louisiana, James H. Welsh (the Commissioner), were preempted by general state law and, therefore, unconstitutional; and (2) in favor of the Commissioner, declaring that the Office of Conservation had complied with provisions of state law that mandate a state agency consider a master plan, which has been duly adopted by a parish, before undertaking any activity or action affecting the adopted elements of the master plan. We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
The following seminal facts are undisputed. In 1998, St. Tammany Parish adopted a home rule charter. In 2007, St. Tammany Parish passed Ordinance No. 07-1548, which adopted the St. Tammany Parish Unified Development Code (UDC). Ordinance No. 10-2408, which was passed by St. Tammany Parish in 2010, completed the process of rezoning unincorporated areas of St. Tammany Parish, including those that are the subject of the drilling permit issued by the Commissioner and which form the basis of this litigation.
On August 29, 2014, the Commissioner issued Order No. 1577, approving and adopting Unit TMS RA SUA, a single drilling and production unit created for the exploration and production of oil and gas from the Tuscaloosa Marine Shale, Reservoir A, in the Lacombe Bayou Field located in St. Tammany Parish. A permit issued by the Commissioner on December 19, 2014, to Helis Oil, by Order No. 1577-1, allowed for the drilling of the EADS POI-TEVENT ET AL No. 001 Rwell. The proposed well is located in a wholly residential area designated as “A-3 Suburban District” on the St. Tammany Parish zoning map[1] and. sited over and through the Southern Hills Aquifer, the sole source of drinking water in the area.[2] No structures are situated within a one-mile radius of the proposed drilling site, and the property has been a pine tree farm for at least the past thirty years.
' The Parish' filed this lawsuit against the Commissioner seeking, among other things, declaratory relief, averring that the zoning designation of the area of the property covered by Helis Oil’s drilling permit rendered such land use illegal. Both CCST, a non-profit organization “dedicated to championing good governance and promoting transparency in government,” and Helis Oil intervened. Each of the four parties subsequently filed-re *6 spective motions for summary judgment. After a hearing on the motions, the trial court rendered judgment in favor of Helis Oil and the Commissioner. These appeals by the Parish and COST followed.[3]
J^DISCUSSION '
In granting summary judgment in favor of Helis Oil, the trial court determined that La. R.S. 30:28 F expressly preempted St. Tammany Parish’s zoning ordinances and found them unconstitutional but only insofar as the zoning ordinances prohibited or interfered with Helis Oil’s drilling of the EADS. POITEVENT ETAL No. 001 well.[4]
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Schroeder v. Bd. of Supervisors of Louisiana State Univ., 591 So.2d 342, 345 (La.1991). The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with supporting affidavits, if any, admitted for purposes of the motion for summary judgment show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B(2) (prior to its amendment by *7 2015 La. Acts No. 422, § l);[5] M & M Financial Services, Inc. v. Hayes, 2014-1690 (La.App. 1st Cir.6/5/15), 174 So.3d 1172, 1173.
The Louisiana Constitution establishes environmental preservation as the public policy of the state. La. Const. Art. IX, § 1 provides:
16The natural resources of the [S]tate, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy.
Pursuant to the constitutional mandate of Article IX, § 1, the desire to protect the health and safety of the State’s citizens, the growth of the State’s industrial activity, and the need to coordinate environmental control regulations with the federal program have prompted the legislature to act in a number of significant ways in the field of environmental regulation at the state level. See Vanguard Environmental, LLC v. Terrebonne Parish Consol. Gov’t, 2012-1998, p. 4 (La.App. 1st Cir.6/11/13), (an unpublished opinion) (relying on Rollins Environmental Services of Louisiana, Inc. v. Iberville Parish Police Jury, 371 So.2d 1127, 1133 (La.1979)). The legislature has created an extensive body of law that addresses every phase of the oil and gas exploration process, from the initial exploration and drilling phases to cleanup and disposal of waste. The state entity responsible for the regulation of the oil and gas resources of the State is the Office of Conservation, which is directed and controlled by the Commissioner of Conservation. La. R.S. 30:1-101.10; Vanguard Environmental, LLC, 2012-1998 at p.4.
La. R.S. 30:28 F states:
The issuance of the permit by the [Cjommissioner ... shall be sufficient authorization to the holder of the permit to enter upon the property covered by the permit and to drill in search of minerals thereon. No other agency or political subdivision of the [SJtate shall have the authority, and they are hereby expressly forbidden, to prohibit or in any way interfere with the drilling of a well or test well in search of minerals by the holder of such a permit. [Emphasis added.]
Article VI of the Louisiana Constitution pertains to local governments. Pointing to the land use and zoning power bestowed to St. Tammany Parish |7in La. Const. Art. VI, § 17,[6] the Parish and CCST maintain that La. R.S. 30:28 F can *8 not displace its authority to regulate land use and zoning within its geographic boundaries.
Local power is not preempted unless it was the clear and manifest purpose of the legislature to do so, or the exercise of dual authority is repugnant to a legislative objective; if there is no express provision mandating preemption, the courts will determine the legislative intent by examining the pervasiveness of the state regulatory scheme, the need for state uniformity, and the danger of conflict between the enforcement of local laws and the administration of the state program. Palermo Land Co., Inc. v. Planning Common of Calcasieu Parish, 561 So.2d 482, 497 (La.1990) (citing Hildebrand v. City of New Orleans, 549 So.2d 1218, 1227 (La.1989)).
We believe, as did the trial court, that St. Tammany Parish’s zoning ordinances must yield to state law based on the language set forth in La. R.S. 30:28 F, providing that a political subdivision is “hereby expressly forbidden ... to prohibit or in any way interfere with the drilling of a well ... by the holder of ... a [duly-authorized] permit,” which clearly and manifestly evinces the legislative intent to expressly preempt that area of the law. Moreover, the pervasiveness of the legislation, which addresses every aspect of oil and gas exploration as well as the need for uniformity and the danger of conflicts between the enforcement of [ 8local laws, also demonstrates the legislative intent to impliedly preempt that area of the law. See Vanguard Environmental, LLC, 2012-1998 at p. 4. Therefore, we hold that the St. Tammany Parish zoning ordinances are preempted by state law insofar as they affect the State’s regulation of oil and gas activity.
This result is underscored by the provisions of La. Const. Art. VI, § 9(B), which state, “Notwithstanding any provision of this Article, the police power of the [S]tate shall never be abridged.” The Commissioner’s power is an exercise of the State’s police powers. See Amoco Production Co. v. Thompson, 516 So.2d 376, 384 (La.App. 1st Cir.1987), writs denied, Amoco Prod. Co. v. Thompson, 520 So.2d 118 (La.1988).
The Parish suggests that statutory provisions enacted by the legislature in accordance with the constitutional grant of power of La. Const. Art. VI, § 17, which mandate uniformity in land use and zoning regulations, preclude the conclusion that La. R.S. 30:28 F preempts the St. Tammany Parish zoning ordinances. See La. R.S. 33:4780.41 and 33:4780.42.[7] But these provisions, directed to “the governing authori *9 ty of a parish,” do not apply to the Commissioner in the exercise of the State’s police powers to regulate oil and gas activity-
|flThe Parish and COST assert that the constitutional reservation of police power in Article VI, § 9(B) to the State does not include zoning powers because those powers are constitutionally granted to local governments, such as St. Tammany Parish, thereby precluding the conclusion that in the regulation of oil and gas activity, State law preempts local zoning ordinances. We disagree.
Although the constitutional grant of zoning authority set forth in La. Const. Art. VI, §17 bestows land use and zoning power in local governmental subdivisions, that grant of power is necessarily and expressly limited by the provisions of Article VI, § 9(B) which, in stating that the police power of the State shall never be abridged, expressly denotes “[n]ot with standing any provision of this Article.” (Emphasis added). Because § 17 is contained within “this Article,” i.e. Article VI, the land use and zoning power granted to local governmental subdivisions cannot abridge the State’s police power, a power that includes the Commissioner’s regulation of oil and gas activity under! La. Const. Art. IX, § 1.
Our conclusion is further buttressed by the delegation of power to local governmental subdivisions in the Louisiana Constitution. “Subject to and not inconsistent with the constitution,” under Paragraph (A),, the provisions of La. Const. Art. VI, § 5, addressing home rule charters adopted by a local government after the effective date of the present constitution,[8] provide:
(E) Structure and Organization; Powers; Functions. A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its, affairs, not denied by general law or inconsistent with this constitution. [Emphasis added.]
La. R.S. 30:28 F is a general law enacted by the legislature that denies authority to a political subdivision — such as the Parish — by expressly “prohibiting] or in any way interfering] with the drilling of a well ... by the holder of ... a [duly-authorized] permit.” Therefore, to the extent that St. Tammany Parish’s zoning ordinances can be considered the local government’s exercise of a power and performance of a necessary, requisite, or proper function for the management of its affairs, under Subsection (E) of Article VI, § 5 and the legislature’s enactment of La. R.S. 30:28 F, it has been denied by general law.[9]
*10 We likewise find no merit in CCST’s assertion that under La. Const. Art. VI, § 6, the State cannot preempt home-rule-charter, local-government, zoning ordinances in the regulation of oil and gas activity. According to Article VI, § 6, “The legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter.” But CCST has not pointed to, and we have not found, any provision of La. R.S. 30:1-101.10 that purports to change or affect the structure, organization, or distribution and redistribution of the powers of St. Tammany.[10]
InLastly, we reject CCST’s contention that the provisions of La. Const. Art. IX, § 1, which address the natural resources and environment of the State, provide a concurrent power to both the State and the local governments to protect the health, safety, and welfare of the people. With St. Tammany Parish’s enactment of the UDC, which includes the zoning ordinances, CCST maintains the local government has fulfilled its Article IX, § 1 duty. CCST urges that the State’s public interest duty under Article IX, § 1 does not supersede St. Tammany Parish’s power under the same constitutional provision.
The provisions of Article IX, § 1 mandate that “[t]he legislature shall enact” laws to implement the policy of protecting, conserving, and replenishing-insofar as possible and consistent with the health, safety, and welfare of the people-the natural resources of the State, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment. As such, the legislature enacted La. R.S. 30:1-101.10, which includes the general law set forth in La. R.S. 30:28 F, 'forbidding a local governmental subdivision, such as St. Tammany Parish, from prohibiting or in any way interfering with the drilling of a well by the holder of a duly-authorized permit like Helis Oil. Without offering any opinion on the scope of duty a local governmental subdivision may have under La. Const. Art. IX, § 1, we find no merit in CCST’s assertion.
The Parish’s final complaint challenges that portion of the trial court’s judgment rendered in favor of the Commissioner, finding the Office of Conservation complied with the provisions of state law that require consideration of a parish’s master plan. According to the provisions of La. R.S. 33:109.1, “Whenever a parish or municipal planning commission has adopted a master plan, [Sjtate agencies and departments shall consider such adopted master plan before undertaking *11 any activity or action which would affect the adopted elements of the master plan.”
hi/The record establishes that in rendering his decisions (first in approving and adopting the drilling and production unit and later in issuing a drilling permit to Helis Oil), the Commissioner did, indeed, consider the provisions of St. Tammany’s master plan, as set forth in the Parish’s UDC.[11] While the Parish asks this court to find that the word “consider” as used in La. R.S. 33:109.1 means to “give heed to,” we decline to do so. Applying the ordinary meaning of “consider,” we conclude the record amply demonstrates that the Commissioner examined, deliberated about, pondered over, and inspected, see Black’s Law Dictionaey 306 (6th ed.1990), the provisions of the St. Tammany Parish UDC in making his decisions. As such, the provisions of La. R.S. 33:109.1 were complied with by the Office of Conservation.[12]
DECREE
For all of these reasons, we affirm the trial court’s grant of summary judgment in favor of Helis Oil & Gas Company, LLC and the Commissioner of the Office of Conservation of the State of Louisiana, James H. Welsh. Appeal costs in the total amount of $9,055.00 are assessed one-half against plaintiff-appellant, St. Tammany Parish Government, and one half against intervenor-appellant, Concerned Citizens of St. Tammany.
AFFIRMED.

. The record establishes the intent of the "A-3 Suburban’’-classification is to provide a single-family residential environment on moderate sized lots. Permitted activities are limited to single-family dwellings and certain specified cultural, educational, religious, and public uses.

. It is undisputed that the United States Environmental Protection Agency designated the Southern Hills Aquifer as the sole source of drinking water for the area of the proposed well.

. The trial court rendered a partial summary judgment on the request for declaratory relief, expressly severing from its consideration all issues except whether the Commissioner’s issuance of the drilling permit to Helis Oil was permissible under the law in light of the Parish’s zoning ordinances and whether the Commissioner had complied with state law requiring consideration of the St. Tammany Parish’s Master Plan. The trial court expressly designated the judgment as final for purposes of immediate appeal. During oral arguments before this court, the parties were extensively questioned about the immediacy of tire appeal since the propriety of the issuance of the permits has not yet been reviewed. Helis Oil subsequently sought leave to brief this issue, among others, and the Commissioner filed a brief in support of granting leave to Helis Oil. The Parish and CCST also filed briefs opposing the granting of leave but nevertheless expressly agreed that review of the trial court’s judgment was proper at this time. On November 25, 2015, this court denied Helis Oil’s motion. We find no abuse of discretion by the trial court in concluding there was no just reason to delay review of its judgment. Specifically, our review of the trial court’s partial summary judgment, addressing only the issues of whether the permit was issued in conformity with our state constitution and statutory law, will not be mooted by the subsequent judicial review of the propriety of the issuance of the permit pursuant to La. R.S. 30:12 & 30:15. [... ] As the trial court noted, a full and complete determination of the issues raised in this appeal are necessary for a full and complete judicial review. [... ] Indeed, an erroneous ruling on these threshold legal issues might require a re-trial on the remaining outstanding issues. Mindful that nothing before us deprives the parties of their administrative rights to contest issues related to the issuance of the permit under La. R.S. 30:28 — particularly the location of the well — we conclude review of the partial summary judgment is properly before us. See La. C.C.P. art. 1915 B and R.J. Messinger, Inc. v. Rosenblum, 2004-1664 (La.3/2/05), 894 So.2d 1113, 1122.

. Although the judgment appealed from decreed certain St. Tammany Parish ordinances unconstitutional as applied to the Helis Oil drilling permit, see La. Const. Art. V, § 5(D), the Louisiana Supreme Court has held that it lacks jurisdiction over a direct appeal when the trial court finds an ordinance has been preempted by a state law. See Vanguard Environmental, LLC v. Terrebonne Parish Consol. Gov’t, 2012-1998, p. 2 (La.App. 1st Cir.6/11/13) (unpublished opinion), writ denied, 2013-2165 (La.11/22/13), 126 So.3d 490 (relying on City of Baton Rouge v. Goings, 95-2542 (La.12/13/96), 684 So.2d 396, 397; Twin Parish Port Comm'n v. Berry Bros., Inc., 94-2594 (La.2/20/95), 650 So.2d 748, 749; Desormeaux Enterprises, Inc. v. Village of Mermentau, 568 So.2d 213 (La.App. 3d Cir.1990) (after remand by the supreme court upon a finding of lack of subject matter jurisdiction)). Thus, this matter is properly subject to our appellate review.

. According to the provisions of 2015 La. Acts No. 422, § 2, the amendment of La. C.C.P. art. 966 "shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date.” Because this matter was pending appellate review on January 1, 2016, the effective date of the act, for purposes of our review, we apply the prior version.

. The provisions of La. Const. Art. VI, § 17 provide, in pertinent part:
Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures.
See also La. Const. Art. VI, § 5(F), which states, "Additional Powers and Functions. Except as prohibited by its charter, a local governmental subdivision adopting a home rule charter under this Section shall have the additional powers and functions granted to local governmental subdivisions by other provisions of this constitution.”

. La. R.S. 33:4780.41 provides in relevant part:
[T]he governing authority of a parish may divide the parish into districts of such number, shape, and area as may be deemed best suited to carry out such purposes. Within the districts so created, said governing authority may regulate and restrict the erection, construction, alteration, or use of buildings, structures, or land. All such regulations shall be uniform for each class or kind of land and structure throughout each district; however, the regulations of one district may differ from those in other districts.
According to La. R.S. 33:4780.42:
Regulations adopted pursuant to this Sub-part shall be made in accordance with a comprehensive plan and designed to lessen congestion in the public stfeets, secure safety from fire, promote health and the general welfare, provide adequate light, avoid undue concentration of population, facilitate adequate transportation, water supply, sewerage, schools, parks, and meet other public requirements. Such regulations shall be made with reasonable consideration of the character of a district and its peculiar suitability for particular uses and with a view to conserving the values of buildings and encouraging the most appropriate use of land throughout the parish.

. See La. Const. Art. XIV, § 35, which states in pertinent part, "This constitution shall become effective at twelve o’clock midnight on December 31, 1974." Thus, St. Tammany Parish, which adopted its home rule charter in 1998, falls within the ambit of La. Const. Art. VI, § 5.

. CCST’s reliance on City of New Orleans v. Bd. of Commissioners of Orleans Levee Dist., 93-0690 (La.7/5/94), 640 So.2d 237 is misplaced because in that case, the supreme court examined the home rule charter of the City of New Orleans under La. Const. Art. VI, § 4. The City of New Orleans’s charter, which was in existence prior to adoption of the current Louisiana Constitution, includes power of immunity from the state legislature’s authority to withdraw, preempt, or deny the City’s power to initiate local zoning and building ordinances. As noted by the City of New Orleans court, "local governmental subdivisions that acquire home rule powers after the adoption of the constitution do not enjoy the same degree of immunity from control by the *10 legislature. Article VI, § 5 authorizes any such local governmental subdivision to adopt a home rule charter providing for the exercise of any power 'necessary, requisite; or proper for the management of its affairs, not denied by general law or inconsistent with this constitution.’ ” 640 So.2d at 246. (Emphasis added.) Similarly, City of Baton Rouge v. Hebert, 378 So.2d 144, 146 (La.App. 1st Cir.1979), writ denied, 380 So.2d 1210 (La.1980), is inapposite in that the home rule charter before the court was one established prior to the adoption of the current constitution. See e.g., Daiquiri Café Sherwood Inc, v. Parish of East Baton Rouge, 2000-1745 (La.App. 1st Cir. 11/9/01), 818 So.2d 1, 4.

. To the extent that CCST implies the exclusive grant of the power of land use and zoning within St. Tammany Parish’s geographic boundaries under Article VI, § 17 is a "function” bestowed on the local governmental subdivision, as we have already explained, , that power is circumscribed by the disallowance of the abridgment on the State's police power "[n]ot with standing” any powers otherwise set forth in Article VI as set forth in the provisions of Article VI, § 9(B).

. See La. R.S. 33:101(1) defining a master plan as "a statement of public policy for the physical development of a parish or municipality adopted by a parish or municipal planning commission.”

. Although the Commissioner maintains that the Office of Conservation is not required to comply with the provisions of La. R.S. 33:109.1 and suggests that this court may render a ruling so declaring, because the trial court limited the scope of summary judgment to the issue of whether the Office of Conservation had so complied, the matter, which the Commissioner did not raise by answering the appeals, is not properly before us. See Dan-Cin Constr. Co., Inc. v. Thrasher, 2008-1552 (La.App. 1st Cir.2/13/09), 9 So.3d 205, 208 (appellate court declined to review issue not considered by the trial court); see also La. C.C.P. art. 2133 (appellee desiring to have the judgment modified, revised, or reversed must timely file an answer to the appeal, stating the relief demanded).