CRAIN, J.
12This is an appeal of the district court’s judgment upholding the Louisiana Commissioner of Conservation’s order approving an application for construction of a new transfer station for commercial oil and gas exploration and production (E & P) waste. While recognizing the Commissioner’s broad statutory authority to regulate, conserve and use the State’s oil and gas resources, we find that the subject permit is beyond the scope of what was requested and, therefore, was issued in violation of lawful procedure. We reverse the district court’s judgment, vacate the Commissioner’s order, and remand this matter for further proceedings.
FACTS AND PROCEDURAL HISTORY
FAS Environmental Services, LLC applied to the Department of Natural Resources for a permit to construct and maintain a commercial E & P waste transfer station in St. Martin Parish. As proposed, the transfer station consisted of a truck unloading area and above ground tanks to receive and temporarily store E & P waste. The waste would be transported by pipeline to FAS’s existing disposal facility, then injected into FAS’s disposal wells. FAS represented that the new transfer station would take the place of the existing one and, because the new transfer station would be directly connected to the disposal site by pipeline, the need to barge the waste to the disposal site would be eliminated. The new transfer station would be located approximately one and one-half miles north of FAS’s existing transfer station.
The Office of Conservation conducted a public hearing and received public comments regarding the proposed transfer station. The Commissioner then issued Conservation Order No. ENV 2015-03 CFT, which approved FAS’s application and contained findings of fact and responses to the public comments. The Louisiana Environmental Action Network (an umbrella organization for environmental and citizen groups), Concerned Citizens of Belle River (a non-profit | sorganization dedicated to preserving and protecting the environment in and around the area of Belle River), Hazel Cavalier (an individual member of Concerned Citizens of Belle River and owner of property located near the approved transfer station), and the Atchafalaya Basinkeeper (a non-profit corporation committed to protecting and restoring the bayous, wetlands, and greater ecosystems within the Atchafalaya Basin) filed a suit for judicial review of the conservation order. The district court upheld the conservation order. This appeal followed.
STANDARD OF REVIEW
Any aggrieved person may appeal the Commissioner’s order to the district court. La. R.S. 30:12A. Judicial review is conducted by the court and is confined to the record. La. R.S. 30:12B(4). The district court may affirm the Commissioner’s order or remand the case for further proceedings. La. R.S. 30:12B(5). The district court may reverse or modify the order if substantial rights of an appellant have been prejudiced because the Commissioner’s findings, inferences, conclusions, or decisions are: in violation of constitutional or statutory provisions; in excess of statutory authority; made upon unlawful procedure; affected by other error of law; arbi *386 trary or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. La. R.S. 80:12B(6).
The plaintiff has the burden of proof when challenging the Commissioner’s order. La. R.S. 30:12C(2). On questions of law, the reviewing court owes little or no deference to the Commissioner’s decision; however, the Commissioner’s findings of fact are reviewed under the manifest error standard. Davidson v. Welsh, 10-2213, p.3 (La. App. 1 Cir. 6/17/11), 2011 WL 2448226. Where the Commissioner has the opportunity to judge the credibility of witnesses by first-hand observation of their demeanor on the witness stand and the reviewing court |4does not, due regard must be given to the Commissioner’s credibility determinations. See La. R.S. 30:12B(5). Further, in reviewing the Commissioner’s conclusions and exercises of discretion, the reviewing court must apply the arbitrariness test, and the party challenging the Commissioner’s decision must make a clear showing that the administrative action was arbitrary and capricious. Gossen v. Welsh, 15-0852, p.3 (La. App. 1 Cir. 6/2/16), 2016 WL 3143952, writ denied, 16-1259 (La. 10/28/16), 203 So.3d 1054.
An aggrieved party may obtain a review of any final judgment of the district court by appeal to the appropriate circuit court of appeal. See La. R.S. 30:12D. In reviewing the district court’s judgment, no deference is owed by the court of appeal to the factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. Davidson, 2011 WL 2448226 at p.4.
DISCUSSION
The appellants challenge the Commissioner’s order approving the transfer station on four grounds: 1) the Commissioner violated statutory law by failing to consider conflicts with St. Martin Parish’s master plan before approving the order that will move industrial activity into a residential area and will route heavy industrial truck traffic through a residential area and affect nearby recreational and tourism resources; -2) the Commissioner was arbitrary and capricious in approving the order when the record does not establish that the containment wall surrounding the storage tanks will withstand the velocity of the 100-year flood- as required by the Commissioner’s rules; 3) the Commissioner committed legal error in concluding that local zoning ordinances were preempted and therefore irrelevant to his decision; and 4) the Commissioner was arbitrary and capricious in approving the order, which authorized FAS to operate a second transfer station without requiring FAS to close the-first transfer station.
I/The Office of Conservation, in the Department of Natural Resources, exercises the functions of the state with respect to the regulation, conservation, and use of natural resources not specifically within the jurisdiction of other state departments or agencies, including conserving oil and gas resources and matters pertaining thereto; promoting and encouraging exploration, production, and refining efforts for oil, intrastate gas, and other hydrocarbons; controlling and allocating energy supplies and distribution; leasing, constructing and operating intrastate pipeline systems; implementing and enforcing any emergency gas shortage allocation plan and setting priorities; regulating the minimum sale price of intrastate natural gas, and managing ground water resources, all in accordance with applicable laws. La. *387 R.S. 36:358C. The Commissioner of Conservation has jurisdiction and authority over all persons and property necessary to effectively enforce laws relating to conserving oil or gas, and has the authority to make, after notice and hearings provided by law, any reasonable rules, regulations, and orders necessary from time to time in the proper administration and enforcement of the. conservation laws. See La. R.S. 30:1; La. R.S. 30:4; Davidson, 2011 WL 2448226 at p.3. The Commissioner’s power to regulate the state’s oil and gas resources is an exercise of constitutionally protected police powers, which may not be abridged. See La. Const. Art. VI, § 9; St. Tammany Parish Government v. Welsh, 15-1152 (La. App. 1 Cir. 3/9/16), 199 So.3d 3, 8.
At the outset, we reiterate our holding in Vanguard Environmental, LLC v. Terrebonne Parish Consolidated Government, 12-1998, 2013 WL 4426508 (La. App. 1 Cir. 6/11/13), writ denied, 13-2165 (La. 11/22/13), 126 So.3d 490, that the legislature has vested the Commissioner with exclusive jurisdiction to regulate the disposal of any waste product into the subsurface by means of a disposal well, which includes siting disposal facilities. We further recognize that siting E & P | (¡transfer stations, such as the one at issue in this case, is within that exclusive jurisdiction. See La. R.S. 30:4.
As part of exercising this jurisdiction, the rules and procedures- promulgated by the Commissioner require anyone seeking a permit to construct and operate an E & P transfer station to file a permit application. La. Adhiin. Code 43:XIX:521. Here, FAS’s application sought permission to construct an E & P transfer station approximately one and one-half miles north of its existing transfer station. In the permit application and throughout these proceedings, FAS represented that the new transfer station would replace the existing one, resulting in the closure of the existing transfer station.
In its responses to IT questions,[1] FAS candidly represented .its application should be considered in the context of the new proposed transfer station replacing the existing one, thereby eliminating the need to barge waste to the disposal site, and transitioning from the use of diesel power equipment by directly attaching to electrical utility lines. FAS suggested that relocating the transfer station and closing the existing transfer station would not have any significant net adverse impact on property values. FAS further represented that it did not expect ah increase in truck traffic because the disposal capacity was not increasing, rather, it whs seeking “approval for a relocation and improvement of an existing transfer station.”
In answering how it determined the proposed facility was needed, FAS said:
[T]he question really posed by FAS’s current application is whether there is a need for the proposed’ Relocated Transfer Station as described herein, which entails a new location upstream, a switch to |7the use of a direct pipeline transfer system in lieu of use of a “shuttle barge” and the transition of the overall FAS facility operation system to one powered *388 by electric utility instead of on-site diesel engine generated power.
FAS further said:
Happily, FAS Management’s decision after its analysis of the need for the proposed facility changes resulted in the proposal embodied in this Application, which is characterized by a direct and positive correlation between improved economic efficiency and the reduction of adverse environmental impacts. It is an improvement over the current configuration, and it represents clearly justifiable changes in FAS operating procedures and technology that will result in increased efficiency, safety!,] and environmental protection. It is without a doubt a “win/win situation.”
Similarly, in conclusion, FAS asked that its application be granted because “the proposed Relocated Transfer Station Facility will result in a more efficient, quieter, safer!,] and less polluting facility.”
In the order approving FAS’s application, the Commissioner found FAS’s responses to the IT questions “acceptable in support of the application.” The Commissioner determined that “the environment, public health and safety will be protected and that potential impacts, if any, will be minimized.” In pleadings filed in the district court, FAS suggested the Commissioner’s statement indicated the Commissioner “obviously adopted as part of the rationale for his decision” FAS’s “thorough, thoughtful, and complete assessment of the environmental impacts of the proposed Relocated Transfer Station” contained in its responses to IT questions.
Despite the premise of FAS’s application being the closure of the existing transfer station and relocation of its operations, the Commissioner’s order does not restrict FAS from operating both transfer stations. In fact, by unconditionally approving FAS’s application to construct and operate the proposed new transfer station, the Commissioner’s order, while possibly unin-tentioned, results in FAS being permitted to operate two facilities.
|ROn appeal, the Commissioner characterizes the appellants’' argument that the permit could only be issued if the existing facility was ordered to be closed as “myopic,” contending the argument “ignores the fact that the Project (as permitted) will unquestionably reduce the risks of environmental impacts whether the existing facility is closed or not.” The administrative record may contain support for the conclusion that the new facility will reduce the risk of environmental impacts as compared to the risks posed by the existing facility; but, it does not support the conclusion that operating both the new and old facilities close to each other will reduce the risks of environmental impacts associated with just operating one.
FAS only sought to construct and operate a new transfer station to replace its existing one. The environmental data and information provided by FAS is limited to the operation of one transfer station at the new location. Many of FAS’s arguments supporting its application were premised on the new transfer station being safer than the existing one, and that the new station would be environmentally advantageous, creating a “win/win situation.” The public was invited to comment on the application for one operating transfer station. Additional issues may have been raised by the public had they known of the possibility that the permit would allow two operating transfer stations.
The administrative record provides no rational basis for the decision to permit FAS to construct and operate both the new E & P waste transfer station and the one currently operating. We are mindful that our function is not to reweigh the *389 evidence and substitute our judgment for the Commissioner’s and that the siting of such facilities falls within the Commissioner’s exclusive jurisdiction. See Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152, 1159 (La. 1984); see also Vanguard Environmental, LLC, 2013 WL 4426508 at pp. 5-6. However, the Commissioner’s permit is beyond the scope of the application presented, and for which the necessary environmental data was supplied. 19Consequently, the appellants have clearly shown the Commissioner’s order is arbitrary and capricious. Cf. Bowers v. Firefighters’ Retirement System, 08-1268 (La. 3/17/09), 6 So.3d 173, 176 (recognizing that a decision is arbitrary and capricious if there is no rational basis for the action taken).
We note that in pleadings and arguments presented to the district court, FAS reiterated its intention to “replace” the existing transfer station with the new one. FAS also represented that by virtue of the Commissioner’s regulations, which require a certification of truth and accuracy as part of an application, it is legally obligated to close the existing transfer station if the new one is constructed.[2] See La. Admin. Code 43:XIX.519.C.21. These arguments reinforce our conclusion that FAS applied for a permit to construct a new transfer station, to be singularly operated for the purpose of temporarily storing the E & P waste before it is disposed of at FAS’s disposal facility, and the application does not support the Commissioner’s order that can be construed to allow the operation of both transfer facilities.
CONCLUSION
Considering the foregoing, we reverse the judgment of the district court and vacate Conservation Order No. ENV 2015-03 CFT.[3] This matter is remanded to the Louisiana Office of Conservation for reconsideration of this matter in light of this decision. Costs of this appeal in the amount of $6,064.50 are assessed to the State of Louisiana through the Office of Conservation.
DISTRICT COURT JUDGMENT REVERSED; CONSERVATION ORDER NO. ENV 2015-03 CFT VACATED; REMANDED TO THE LOUISIANA OFFICE OF CONSERVATION.
Holdridge J. concurs in Result.

. “IT” questions are derived from, the issues identified by the Louisiana Supreme Court in Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152, 1160 (La. 1984), sometimes referred to as the "IT Decision,” which are considered by administrative agencies in discharging their public trustee functions in awarding permits affecting environmental matters. See Matter of Dravo Basic Materials Co., Inc., 604 So.2d 630, 632, n.1 (La. App. 1 Cir. 1992); Blackett v. Louisiana Dept. of Environmental Quality, 506 So.2d 749, 753-54 (La. App. 1 Cir. 1987); see also Charles S. McCowan, Jr., The Evolution of Environmental Law in Louisiana, 52 La. L. Rev. 907, 921-22 (1992).

. The appellants countered that the regulation upon which FAS relied for this argument applied to injection/disposal wells, not to transfer stations such as the one at issue herein. Resolution of this conflict is not required by our decision herein.

. We pretermit discussion of the remaining issues raised by the appellants.